**UNITED STATES of America, Appellee,**

v.

**Londell WILLIAMS, Appellant.**

**UNITED STATES of America, Appellee,**

v.

**Tammy J. WILLIAMS, Appellant.**

Nos. 88–2698, 88–2740.

United States Court of Appeals, Eighth Circuit.

Submitted April 10, 1989.

Decided July 20, 1989.

---

Lee T. Lawless, St. Louis, Mo., for Londell Williams.

Cynthia Short, Kansas City, Mo., for Tammy Williams.

David M. Rosen, Asst. U.S. Atty., St. Louis, Mo., for appellee.

Before FAGG, Circuit Judge, and FLOYD R. GIBSON and TIMBERS,[*] Senior Circuit Judges.

FLOYD R. GIBSON, Senior Circuit Judge.

Londell Williams pleaded guilty to threatening to kill and inflict bodily harm on a major candidate for the office of President of the United States and possession of an unregistered firearm. His wife, Tammy, pleaded guilty to possession of an unregistered firearm. They argue in this appeal that their sentences are based on incorrect applications of the Federal Sentencing Guidelines. We disagree and affirm the sentences imposed by the district court.[1]

## I. BACKGROUND

The parties stipulated to the following facts. Sometime before May 8, 1988, Londell and Tammy Williams came into possession of a Colt AR–15 rifle. The rifle had been stolen in February 1986, but the government has no proof that Londell or Tammy Williams was involved in the theft. On May 8, 1988, Tammy Williams fired one round from the rifle in the Williamses' apartment where she lived with her husband. Londell and a confidential government informant then took the rifle to a rural area and hid it. The rifle was not registered in the National Firearms Register. Later that day, the informant led county authorities to the rifle.

On May 10, 1988, Londell Williams told the informant that he was a member of a white supremacy group that intended to kill Jesse Jackson, who was then a major candidate for the office of President of the United States. The informant was using a body recorder and he tape recorded that conversation. Soon thereafter, the Williamses suspected that the informant was cooperating with the police. On May 11, 1988, Tammy saw the informant in a blue van parked near her apartment. She went outside and hid near the van in an attempt to observe the informant's activities. Also on that day, a note was found at the informant's apartment which read: "Say cop (Narc) live like a dog, die like a dog." Londell Williams' fingerprint was found on the note.

The informant then went to the Williamses' apartment where an argument between the Williamses and the informant ensued. Tammy and Londell Williams accused the informant of "bringing in the law." Londell told him to leave and warned that there would be "consequences later." Londell and Tammy Williams were arrested with-

---

[*] The HONORABLE WILLIAM H. TIMBERS, Senior United States Circuit Judge for the Second Circuit Court of Appeals, sitting by designation.

[1] The Honorable Edward L. Filippine, United States District Judge for the Eastern District of Missouri.

out incident at their apartment on May 13, 1988.

In a four count indictment Londell Williams was charged with willfully threatening to kill and inflict bodily harm on a major candidate for the office of President of the United States in violation of 18 U.S. C. § 879(a)(3) (1982) (Count I); possession of an unregistered firearm in violation of 26 U.S.C. § 5861(d) (1982) (Count II); threatening to cause bodily harm to an informant with the intent to retaliate against him for information relating to the possible commission of a federal offense in violation of 18 U.S.C. § 1513(a)(2) (1982) (Count III); and using intimidation and threats of physical force to an informant with intent to hinder, delay and prevent the communication of information relating to the possible commission of a federal offense in violation of 18 U.S.C. § 1512(b)(3) (Supp.V.1987) (Count IV).

Tammy Williams was also charged in Counts II, III, and IV of the indictment. Pursuant to a plea agreement, Londell pleaded guilty to Counts I and II and Tammy pleaded guilty to Count II; Counts III and IV were dismissed as to both defendants.

The district court determined that as to Londell Williams, the appropriate count from which to determine the base offense level was Count II, possession of an unregistered firearm. Section 2K2.2 of the Guidelines provides that the base offense level for possession of an unregistered firearm is 12. The district court also assessed a 1-level increase for both appellants pursuant to section 2K2.2(b)(1), which provides for a 1-level increase if the firearm was stolen. In addition, the district court determined that a 2-level increase was appropriate for both appellants pursuant to section 3C1.1, which provides for a 2-level increase if the defendant attempted to impede or obstruct the administration of justice during the investigation of the offense. Finally, the district court reduced the base offense level for both defendants by 2 levels for acceptance of responsibility as provided in section 3E1.1. Thus, the total base offense level for both appellants was 13.

The criminal history category for both appellants was 3, resulting in a sentencing range of 18–24 months. Londell was sentenced to 24 months imprisonment followed by 3 years of supervised release. Tammy was sentenced to 20 months with 3 years of supervised release.

## II. DISCUSSION

### A. Londell Williams' Appeal

Londell Williams first argues that the Sentencing Guidelines are unconstitutional in that they violate the doctrine of separation of powers and the Due Process Clause. Earlier this term, the Supreme Court upheld the Guidelines against a separation of powers challenge. *Mistretta v. United States*, —— U.S. ——, 109 S.Ct. 647, 102 L.Ed.2d 714 (1989). Further, in *United States v. Brittman*, 872 F.2d 827 (8th Cir. 1989), this court rejected the argument raised in this case by Londell Williams that the Guidelines violate the Due Process Clause because they eliminate sentencing judges' discretion. *Id.* at 828. We noted in *Brittman* that sentencing judges retain discretion under enumerated circumstances, but that the Due Process Clause of the Fifth Amendment does not guarantee individualized sentencing in noncapital cases. *Id.* *See also United States v. Nunley*, 873 F.2d 182, 186 (8th Cir.1989). Thus, Londell Williams' claim that the Guidelines are unconstitutional on these bases is without merit.

We now turn to Londell's argument that the district court erred in increasing his base offense level by 2 levels for obstruction of justice and 1 level for the stolen nature of the firearm.

The 2-level increase was made pursuant to section 3C1.1 of the Guidelines, which provides:

> If the defendant willfully impeded or obstructed, or attempted to impede or obstruct the administration of justice during the investigation or prosecution of the instant offense, increase the offense level from Chapter Two by 2 levels.

Sentencing Guidelines, Chapter 3, Part C— Obstruction, § 3C1.1.

Londell claims that the conduct the district court considered in making the 2-level increase (threatening the informant with harm and retaliation) is the same conduct that was the basis for Counts III and IV, which were dismissed pursuant to a plea agreement. Londell claims that this was error, arguing that conduct relevant to counts dismissed pursuant to a plea agreement should not be considered in calculating adjustments to base offense levels.

Williams provides no support for his claim that conduct pertaining to dismissed counts cannot be considered in calculating adjustments. And, we believe that the Guidelines contemplate that such conduct be considered by sentencing judges when deciding whether to adjust the base offense level. Section 1B1.3 of the Guidelines provides in part that

> adjustments in Chapter Three shall be determined on the basis of the following: (1) all acts and omissions committed or aided and abetted by the defendant, or for which the defendant would be otherwise accountable, that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense, or that otherwise were in furtherance of that offense.

Sentencing Guidelines, Chapter 1, Part B—General Application Principles, § 1B1.3.

The quoted passage indicates the Sentencing Commission's intent to give courts the discretion to consider a broad range of conduct in making adjustments. The Guidelines do not explicitly prohibit the consideration of conduct pertaining to dismissed counts, and we see no basis for inferring such a prohibition. Accordingly, we conclude that the district court did not commit legal error in considering Londell's attempts to threaten and intimidate the informant when it adjusted his base offense level.

■ Londell next argues that the district court did not have a sufficient factual basis for assessing the 2-level increase for obstruction of justice. Our review of the district court's findings of fact regarding the sentence is prescribed by statute. We must accept the district court's factual findings unless they are clearly erroneous. 18 U.S.C. § 3742(d) (Supp. V 1987). In light of Londell's stipulation that he threatened the informant both verbally and in writing, we easily conclude that the district court's finding that Londell attempted to impede or obstruct justice is not clearly erroneous.

■ Finally, Londell challenges the district court's assessment of a 1-level increase pursuant to section 2K2.2(b)(1), which provides that "[i]f the firearm was stolen or had an altered or obliterated serial number, increase [the base offense level] by 1 level." Sentencing Guidelines, Chapter 2, Part K—Offenses Involving Public Safety, § 2K2.2(b)(1). Londell argues that the increase authorized by this section is not appropriate where, as here, there is no proof that the defendant was aware of or participated in the theft of the firearm. We reject this argument. Section 2K2.2(b)(1) does not make a distinction based on whether the defendant was aware that the firearm was stolen. It simply provides a 1-level increase when the firearm was stolen, and Londell stipulated to the fact that his unregistered firearm had been stolen. We thus affirm the district court's assessment of a 1-level increase pursuant to section 2K2.2(b)(1).

### B. Tammy Williams' Appeal

Tammy Williams argues that the district court erred in increasing her base offense level by 2 levels for obstruction of justice and by failing to reduce her base offense level due to the minor role she played in the offense. Tammy's arguments essentially challenge the district court's factual findings and, as stated above, our review of those findings is limited by the clearly erroneous standard. Having reviewed the record, we cannot conclude that the district court's findings as to Tammy's base offense level are clearly erroneous.

■ The district court based its assessment of a 2-level increase for obstruction of justice on Tammy's conduct in aiding

and encouraging her husband in threatening the informant. We believe that the district court had sufficient evidence before it to reach that conclusion. Tammy Williams admitted that she hid behind the informant's van in order to overhear his conversation and observe his activity. It can easily be inferred that she later communicated to her husband her suspicions that the informant was associated with the police and thus contributed to her husband's threats to the informant. Further, Tammy participated in the argument with the informant during which Londell made verbal threats and Tammy expressed her belief that the informant had gone to the police. We conclude that in light of these circumstances, the district court's finding that Tammy Williams attempted to obstruct justice is not clearly erroneous.

■ Tammy next argues that the district court erred in refusing to reduce her base offense level pursuant to section 3B1.2 of the Guidelines, which provides:

Based on the defendant's role in the offense, decrease the offense level as follows:

(a) If the defendant was a minimal participant in any criminal activity, decrease by 4 levels.

(b) If the defendant was a minor participant in any criminal activity, decrease by 2 levels.

In cases falling between (a) and (b), decrease by 3 levels.

Sentencing Guidelines, Chapter 3 Part B—Role in the Offense, § 3B1.2.

Tammy submits that in determining whether this section applies, we should consider not only her role in the offense to which she pleaded guilty (possession of an unregistered firearm), but also her role in the other events relevant to this case—namely, her role in the threats made to the informant. The district court rejected this argument and considered only her role in the possession of the unregistered firearm and determined that her role in that offense was neither minor nor minimal. We agree with the district court in both respects.

Section 3B1.2 plainly states that certain reductions should be applied where the defendant played a minimal or minor role "in the offense." We do not believe, as Tammy argues, that this section authorizes reductions for minor roles played in events collateral to the offense charged.

Tammy argues in this regard that the Guidelines contemplate that in many instances conduct other than actual offense conduct will be relevant to sentence determinations. We have no quarrel with this principle. Indeed, in applying section 3B1.2 we think that a sentencing court could appropriately consider conduct other than that which constitutes an element of the charged offense to determine the extent of the defendant's role in the offense. However, we believe that regardless of the conduct that is considered in determining the degree of a defendant's participation in the offense, the pertinent inquiry under section 3B1.2 is the extent of the defendant's role in the offense for which he or she is being sentenced and not the defendant's role in collateral events.

■ Thus, the pertinent question in this case is whether Tammy Williams played a minimal or minor role in possessing the unregistered firearm. The question is not, as Tammy suggests, whether she played a minimal or minor role in obstructing justice, which is not a charged offense but rather a collateral circumstance contributing to an upward adjustment under section 3C1.1.

In considering Tammy's role in the offense the district court determined that she did not deserve a reduction under section 3B1.2. In light of the stipulated facts that Tammy possessed the rifle jointly with her husband and fired the rifle in at least one instance, we do not believe that the district court's finding in this regard is clearly erroneous.

### III. CONCLUSION

We hold that the district court correctly applied the Sentencing Guidelines in this case and that none of its factual findings are clearly erroneous. Accordingly, we af-

firm the sentences imposed by the district court.