**UNITED STATES of America**

v.

**Tony BURKE, Appellant.**

No. 88–3179.

United States Court of Appeals, District of Columbia Circuit.

Argued Sept. 12, 1989.

Decided Oct. 31, 1989.

G. Godwin Oyewole, Alexandria, Va., appointed by this Court, for appellant.

Jay B. Stephens, U.S. Atty., with whom John R. Fisher and Mary Ellen Abrecht, Asst. U.S. Attys., Washington, D.C., were on the brief, for appellee.

Before MIKVA, EDWARDS and WILLIAMS, Circuit Judges.

Opinion for the Court filed by Circuit Judge EDWARDS.

HARRY T. EDWARDS, Circuit Judge:

This case requires us to examine several issues relating to application of the Federal Sentencing Guidelines, *reprinted in* 18 U.S.C.A. App. (West Supp.1989) ("Guidelines"). Appellant Tony Burke pleaded guilty to possession of 100 grams of heroin with intent to distribute and was sentenced to 92 months of imprisonment. In fixing this sentence, the District Court added two "offense level" increments for the "specific offense characteristic" of possession of a firearm. *See* Guidelines § 2D1.1(b). Burke appeals his sentence on the ground that the District Court did not find that he "knowingly" possessed the gun discovered in his tote bag. Because we find that the District Court mistakenly concluded that the increments authorized by section 2D1.-1(b) could be imposed without a showing of scienter, we reverse the trial court's ruling on sentencing and remand the case for further proceedings.

## I. BACKGROUND

The facts underlying this case are not in dispute. On September 7, 1988, Burke travelled from New York to Washington, D.C., by train, arriving at Union Station in the late afternoon. There Burke attracted the attention of law enforcement officers when he sought directions from the officers. Following a brief conversation with Burke, the officers' suspicions were aroused, so they asked for and were given permission by Burke to search his tote bag. The agents found several packets of heroin as a result of their search. They then arrested Burke and brought him to a nearby police station. At the station, an additional search uncovered more heroin and a gun inside Burke's tote bag. *See* Tr. of Hearing (Oct. 19, 1988) at 2–17. Burke was ultimately indicted for one count of possession of heroin with intent to distribute, *see* 21 U.S.C. § 841(a)(1), (b)(1)(B)(i) (1982 & Supp. V 1987); one count of carrying a firearm in connection with a drug offense, *see* 18 U.S.C. § 924(c) (Supp. V 1987); and one count of possession of a firearm by a convicted felon, *see* 18 U.S.C. § 922(g) (Supp. V 1987).

Following the District Court's rejection of Burke's suppression motion, Burke agreed to plead guilty to the drug charge in exchange for the recommended dismissal of the weapons charges, and the case was docketed for sentencing. The presentence report prepared by the probation officer recommended a 92 to 115 month sentence based, inter alia, on a "base offense level" of 26 for the drug possession, *see* Guidelines § 2D1.1(a)(3), and a two-level increment for the "specific offense characteristic" of possession of a firearm, *see* Guidelines § 2D1.1(b). *See* Presentence Report ("P.R.") at 3–4; *id.* at Worksheet A.[1] At

---

**1.** In addition, the probation officer recommended reduction of Burke's offense level by two increments as authorized by section 3E1.-1(a) for "acceptance of responsibility," and determined that Burke should be assigned to "criminal history category IV" for his three pri-or convictions (two as a juvenile), as authorized by section 4A1.1. *See* P.R. at 4–6; *id.* at Worksheet C, Worksheet D. The probation officer also recommended a period of supervised release, as mandated by section 5D3.1, and a fine

the sentencing hearing, defense counsel raised the issue of whether the Government was obliged to show that Burke *knowingly* possessed the gun found in his tote bag before the court could add the two-level increment provided for under section 2D1.1(b). *See* Tr. of Hearing (Dec. 6, 1988) at 4.[2] The court then asked the prosecutor whether it was "reasonable to infer that [Burke] could have felt" the gun in the bag, and the prosecutor responded that she did not "know whether that would be a reasonable inference." *Id.* at 5. Following a side-bar consultation between the court and the probation officer, the court announced:

On the firearm issue, the charge is not that [Burke] intended to possess it, but that he possessed it, and the two points are added not because he intended to possess it, but because he possessed it.

I find that the two points are justified, even if the Government has not proved intent by clear and convincing evidence. They certainly proved possession by clear and convincing evidence, and, of course, you have a right to appeal from any element of this sentence that you wish to appeal from.

*Id.* at 7. The court then imposed a ninety-two month sentence, *see id.* at 11,[3] and this appeal ensued.

## II. ANALYSIS

█ Section 2D1.1(b) of the Guidelines instructs the court to increase the defen-

dant's offense level by two increments "[i]f a firearm or other dangerous weapon was possessed during commission of [a drug] offense." Burke argues that the District Court erred by adding this two-level increment without finding that he *knowingly* possessed the gun found in his tote bag. We agree.[4]

At the sentencing hearing, the District Court clearly distinguished "possession" from "intent to possess" under section 2D1.1(b), and ruled that the prosecution need show only the former to justify the court's addition of the two-level increment. Thus, the trial court's simple finding that Burke "possessed" a gun cannot be construed to incorporate implicitly a finding that Burke *knew* of the gun's presence in his tote bag.[5] In addressing the adequacy of the District Court's sentencing determination, we must therefore address the issue of whether section 2D1.1(b) authorizes imposition of a two-level increment for even the unwitting possession of a firearm. Because this is a purely *legal* question, we review the District Court's ruling de novo. *See* 18 U.S.C. § 3742(e)(2) (Supp. V 1987); *United States v. Otero*, 868 F.2d 1412, 1414 (5th Cir.1989).

### A. The Requirement of Scienter under Section 2D1.1(b) of the Guidelines

The United States conceded at oral argument that section 2D1.1(b) should not be read to apply in the absence of scienter,

range of $12,500 to $2,000,000, as mandated by section 5E4.2.

2. Burke apparently told the police that he was delivering the heroin for another person, who furnished Burke with the tote bag. *See id.*

3. The District Court also ordered a four-year period of supervised release during which Burke is not to possess a firearm and is to participate in a substance-abuse program. The trial judge also imposed a $50 assessment under 18 U.S.C. § 3013 (Supp. V 1987); however, the fines mandated by the Guidelines were waived because of Burke's inability to pay, *see* Guidelines § 5E4.2(f). *See* Original Record on Appeal at 11.

4. Burke also challenges the District Court's denial of his motion to suppress evidence seized at the scene of his arrest. However, Burke failed to enter a conditional plea of guilty, reserving in

writing the right, on appeal from the judgment, to obtain review of the trial court's adverse determination on his pretrial motion. Consequently, review of this issue is foreclosed. *See* Fed.R.Crim.P. 11(a)(2); *United States v. Rinaldi*, 808 F.2d 1579, 1582 n. 3 (D.C.Cir.1987) (per curiam).

5. In its brief to this court, the United States appeared to make this argument. However, during oral argument, counsel for the Government was very forthright in conceding that the trial court had added the two-level increment without any apparent finding that the appellant *knowingly* possessed the gun found in his tote bag. Counsel agreed that the case should be remanded to the District Court for further consideration in the absence of any finding on scienter.

and we find this concession to be well founded. Although section 2D1.1(b) itself is silent as to scienter, section 1B1.3—which supplies "general application principles"—is not:

(a) .... *Unless otherwise specified,* (i) the base offense level where the guideline specifies more than one base offense level, *[and] (ii) specific offense characteristics* ... shall be determined on the basis of the following:

(1) all acts or omissions committed or aided and abetted by the defendant, or for which the defendant would be otherwise accountable, that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense, or that otherwise were in furtherance of that offense; ...

(3) all harm or risk of harm that resulted from the acts or omissions specified[,] ... *if the harm or risk was caused intentionally, recklessly or by criminal negligence*[; and] ...

(4) *the defendant's state of mind, intent, motive and purpose in committing the offense....*

Guidelines § 1B1.3 (emphasis added). This section suggests that a defendant's mental state must be taken into account in connection with any determination whether to impose the increments authorized for firearms possession under section 2D1.1(b).

This interpretation of the Guidelines is reinforced by two well-established principles of statutory construction. The first holds that "ambiguities in criminal statutes must be resolved in favor of lenity." *United States v. Batchelder,* 442 U.S. 114, 121, 99 S.Ct. 2198, 2202, 60 L.Ed.2d 755 (1979). Thus, in the face of any uncertainty over whether section 1B1.3(a)(3) operates to require a showing of scienter under section 2D1.1(b), we are obliged to hold that it does.

◼ The second pertinent rule of construction is the presumption against strict liability. *See Morissette v. United States,* 342 U.S. 246, 250–63, 72 S.Ct. 240, 243–49, 96 L.Ed. 288 (1952).[6] Measures that impose criminal punishment without a showing of mens rea occupy a "generally disfavored status." *United States v. United States Gypsum Co.,* 438 U.S. 422, 438, 98 S.Ct. 2864, 2874, 57 L.Ed.2d 854 (1978). Courts will therefore not infer the absence of a scienter requirement from the "simple omission of the appropriate phrase from the statutory definition," *id.,* but, rather, will insist that a reason to impose strict liability appear in the legislative history or in the structure of the contested legal norm. *See generally Liparota v. United States,* 471 U.S. 419, 426–27, 105 S.Ct. 2084, 2088–89, 85 L.Ed.2d 434 (1985); *United States v. Nofziger,* 878 F.2d 442, 452–53 (D.C.Cir.1989).

The presumption against strict liability may be overcome when the statute in question defines a so-called "public welfare" offense like illegal gun possession, *see, e.g., United States v. Freed,* 401 U.S. 601, 609, 91 S.Ct. 1112, 1118, 28 L.Ed.2d 356 (1971), or the sale of adulterated food, *see, e.g., United States v. Park,* 421 U.S. 658, 671–72, 95 S.Ct. 1903, 1911, 44 L.Ed.2d 489 (1975); *United States v. Dotterweich,* 320 U.S. 277, 280–82, 64 S.Ct. 134, 136–37, 88 L.Ed. 48 (1943). The "inherent danger" of these activities makes it reasonable to impute knowledge to the defendant that his conduct was subject to legal restriction. *Nofziger,* 878 F.2d at 453. But this rationale clearly presupposes awareness on the defendant's part that he is engaging in the activity deemed inherently dangerous. For this reason, although most federal firearms statutes impose liability regardless of

---

**6.** Although cases generally apply this rule to statutes that define criminal offenses, we have little doubt that it should also be applied to legal norms that define aggravating circumstances for purposes of sentencing. Such is clearly true of the rule of lenity. *See, e.g., Bifulco v. United States,* 447 U.S. 381, 387, 100 S.Ct. 2247, 2252, 65 L.Ed.2d 205 (1980). Like that rule, the presumption against strict liability is founded on the principle that laws that deprive an individual of his liberty should be strictly construed. *See generally* 3 SUTHERLAND STATUTORY CONSTRUCTION § 59.04 (D. Sands 4th ed.) (N. Singer rev. ed. 1986). Laws that enhance the sentence of a criminal defendant meet this description.

whether the defendant knew that his possession of a firearm was *illegal,* they are nonetheless construed by courts to apply only when the defendant knew he was *in possession* of a firearm. *See, e.g., Freed,* 401 U.S. at 607, 91 S.Ct. at 1117 (National Firearms Act) ("[T]he only knowledge *required to be proved* was knowledge that the instrument possessed was a firearm." (emphasis added)); *United States v. Dancy,* 861 F.2d 77, 80–81 (5th Cir.1988) (18 U.S.C. § 922(g)) (same).[7]

The District Court's construction of section 2D1.1(b), in contrast, would authorize enhanced punishment even if the defendant could show that he reasonably believed that the firearm found in his possession was a bar of soap or some other harmless object. Such a construction has the potential "to criminalize a broad range of apparently innocent conduct." *Liparota,* 471 U.S. at 426, 105 S.Ct. at 2088. We therefore decline to adopt such an interpretation of the Guidelines.[8]

B.  *The Mental State Required by Section 2D1.1(b)*

Having determined that the offense-level increments authorized by section 2D1.1(b) cannot be imposed absent a showing of scienter, we now address the question of precisely what mental state the provision requires. We conclude that the sentencing judge should upgrade the sentence of a drug defendant who possessed a dangerous weapon or firearm whenever it is found that the defendant possessed it "intentionally, recklessly or by criminal negligence." Guidelines § 1B1.3(a)(3). In addition to tracking the language of the Guidelines' application principles, this standard implements the broader purposes underlying section 2D1.1(b). Official commentary explains that "[t]he enhancement for weapon possession reflects the increased danger of violence when drug traffickers possess weapons." Guidelines § 2D1.1(b) application note 3.

▪ In adopting a standard that includes not only "intentional" wrongdoing, but also "reckless or criminally negligent" conduct, we do not mean to abandon a scienter requirement. Under this standard, a two-level increment may be added whenever the defendant possessed a firearm or other dangerous weapon in one of two circumstances: (i) where it is shown that the defendant knew that he was in possession of a weapon; or (ii) where there is insufficient proof to show that the defendant knew he was in possession of a weapon, but it is shown that possession was avoidable but for the defendant's recklessness or criminal negligence. Under either circumstance, a scienter requirement must be met.

▪ *Possession with proof of knowledge* includes both actual possession and "constructive possession"; this is so because constructive possession involves *"knowing*

---

7. In other words, under the scienter requirement for weapons possession, the Government need not show that the defendant knew the gun was unregistered, *Freed,* 401 U.S. at 607, 91 S.Ct. at 1117, or that the gun had passed through interstate commerce, *Dancy,* 861 F.2d at 80–81, or that he himself was a felon, *id.* The Government need only show that the defendant knew that he was in possession of a firearm. For this reason, we do not read the Eighth Circuit's decision in *United States v. Williams,* 879 F.2d 454 (8th Cir.1989), as inconsistent with the result we reach today. In *Williams* the court held that section 2K2.2(b)(1) authorizes a one-level increment in the sentence of a defendant convicted of possessing an unregistered firearm when the Government shows that the weapon was stolen, regardless of whether the defendant was aware of the firearm's illicit origin. *See id.* at 457. The court did not suggest, however, that section 2K2.2(b)(1) applies without a showing that the defendant was or should have been aware that he *possessed a firearm;* indeed, because 2K2.2(b)(1) applies only to a defendant convicted under the National Firearms Act, imposition of its one-level enhancement *presupposes* that the defendant's possession was *knowing.*

8. In *United States v. Morales,* 880 F.2d 827 (5th Cir.1989), the defendant appealed the imposition of the two-level increment authorized by section 2D1.1(b) on the ground that he was unaware that the bag he was carrying contained a gun. The Fifth Circuit upheld the sentence, ruling that the district court was free to credit evidence that the defendant had indicated knowledge of the contents of the bag to an undercover DEA agent. *See id.* at 827–28. This defense of the trial court's factfinding prerogatives would have been unnecessary if section 2D1.1(b) did not require a showing of scienter.

dominion and control." *United States v. Anderson*, 881 F.2d 1128, 1141 (D.C.Cir. 1989) (emphasis added). Thus, a defendant may knowingly "possess" a weapon even though it is not found on his person. *See, e.g., United States v. Hewin*, 877 F.2d 3, 5 (5th Cir.1989) (upholding finding that defendant possessed gun found in a box in the back seat of defendant's automobile); *Otero*, 868 F.2d at 1415 (upholding finding that defendant constructively possessed gun found in nearby van).[9] However, in any case of alleged "possession with proof of knowledge," the Government must show possession of a weapon in reasonable proximity to the scene of the drug transaction. *See United States v. Vasquez*, 874 F.2d 250, 251 (5th Cir.1989) (weapon found several miles from scene not possessed "during commission of the offense"). "For example, the enhancement would not be applied if the defendant, arrested at his residence, had an unloaded hunting rifle in the closet." Guidelines § 2D1.1(b) application note 3.

■ *Possession without proof of knowledge* will result in an enhancement only when the Government proves that the defendant was reckless or criminally negligent in order to show that he should have been aware that he was in possession of a weapon. This will be established when, in addition to having *direct physical control of the weapon*, the defendant failed to take reasonable steps that would have disclosed the weapon in question. *Cf.* Model Penal Code § 2.02(2)(d) (defendant is criminally negligent when "he should be aware of a substantial or unjustifiable risk that the material element exists...."). Thus, in a case of the sort at hand, even if it cannot be shown that the defendant knew the gun was in his tote bag, it may be shown that he was reckless or criminally negligent in failing to find out whether a bag in which he was carrying illicit drugs also contained a firearm.

We recognize that this standard is more liberal than that used in the criminal offense of firearms possession, which requires proof that the defendant knew that he was in possession of a firearm. Nonetheless, section 2D1.1(b)'s less demanding standard is justified because of the grave concern over "the increased danger of violence when drug traffickers possess weapons." Guidelines § 2D1.1(b). *See also Hewin*, 877 F.2d at 5 ("Possession of a firearm during a drug offense need not be illegal to warrant the application of § 2D1.1(b)."). The critical point here is that the standard we announce today requires more than a showing of *mere possession* of a weapon. Thus, section 2D1.-1(b) does not authorize enhanced punishment if, for example, the evidence indicates that the defendant reasonably believed that a firearm found in his possession was a bar of soap or some other harmless object.

### C. *Instructions on Remand*

■ Because the District Court imposed the increments authorized by section 2D1.-1(b) notwithstanding its evident uncertainty that Burke's possession was intentional, reckless or criminally negligent, we are constrained to remand this case for further proceedings. The United States suggests

---

9. In *United States v. White*, 875 F.2d 427, 433 (4th Cir.1989), the defendant pleaded guilty to aiding and abetting in a drug offense. Relying on section 1B1.3(a)(1)'s directive to look to "all acts and omissions committed *or aided and abetted* by the defendant, *or* for which the defendant *would be otherwise accountable*" (emphasis added), the court held that possession of a weapon found under the seat of his codefendant's automobile could be imputed to the defendant when "it was reasonably foreseeable to [the defendant] that his [codefendant] was in possession of a firearm"; under these circumstances, the court found that the defendant was "'otherwise accountable'" for his codefendant's conduct. 875 F.2d at 433. Thus, it appears that the

court applied the increments authorized by section 2D1.1(b) because the defendant was in constructive possession of the gun found in the car even without a showing that the defendant *knew* of the gun's presence. There is nothing in *White* to suggest, however, that the result would have been the same if the gun's presence under the seat had been "reasonably foreseeable" but no principle of complicity had linked the defendant to the car's owner. *Cf. United States v. Whitfield*, 629 F.2d 136, 143 (D.C.Cir.1980) (holding that a defendant's mere presence in an automobile was not sufficient to show constructive possession of a firearm found under the seat of his codefendant's car), *cert. denied*, 449 U.S. 1086, 101 S.Ct. 875, 66 L.Ed.2d 812 (1981).

that we might infer from the record that Burke was aware of the gun found in his tote bag. To engage in this sort of de novo factfinding, however, "would be wholly inconsistent with the function of an appellate court." *Southern Pacific Communications Co. v. American Tel. & Tel.*, 740 F.2d 980, 984 (D.C.Cir.1984), *cert. denied*, 470 U.S. 1005, 105 S.Ct. 1359, 84 L.Ed.2d 380 (1985). Indeed, insofar as we have found that the District Court's sentencing determination rests on "an incorrect application of the sentencing guidelines," 18 U.S.C. § 3742(f)(1), remand is mandated by statute.

■ To facilitate disposition of the case on remand, we address several additional issues raised by the parties. Contrary to Burke's contention, imposition of the increments authorized by section 2D1.1(b) is not contingent on a finding that the gun in the defendant's possession was operable. Commission commentary defines "firearm" to "mean[ ] any weapon which is *designed* to [expel] *or [which] may readily be converted* to expel any projectile by the action of an explosive." Guidelines § 1B1.1 application note 1(e) (emphasis added). This definition embraces inoperable as well as operable firearms. *See United States v. York*, 830 F.2d 885, 891 (8th Cir.1987) (construing same definition as contained in 18 U.S.C. § 921(a)(3) (1982)), *cert. denied*, 484 U.S. 1074, 108 S.Ct. 1047, 98 L.Ed.2d 1010 (1988). Moreover, because the mere "display of a gun instills fear in the average citizen" and "as a consequence . . . creates an immediate danger that a violent response will ensue," *McLaughlin v. United States*, 476 U.S. 16, 17–18, 106 S.Ct. 1677, 1678, 90 L.Ed.2d 15 (1986), construing section 2D1.1(b) to apply to inoperable firearms advances the section's underlying purposes. *Cf.* Guidelines § 2D1.1(b) application note 3 ("The enhancement for weapon possession reflects the *increased danger of violence* when drug traffickers possess weapons." (emphasis added)).

■ Nor does application of section 2D1.1(b) depend on showing that the defendant used the firearm or would have used the firearm to advance the commission of the underlying drug offense. The official commentary indicates that the increments authorized by the section should be imposed so long as "the weapon was present, unless it is *clearly improbable* that the weapon was connected with the offense." *Id.* (emphasis added). *See generally Hewin*, 877 F.2d at 5.

■ Finally, contrary to what the District Court apparently concluded, facts pertinent to sentencing under the Guidelines need not be proven by clear and convincing evidence. Due process is satisfied so long as facts necessary for sentencing are proved by a preponderance of the evidence. *See McMillan v. Pennsylvania*, 477 U.S. 79, 91–92, 106 S.Ct. 2411, 2418–19, 91 L.Ed.2d 67 (1986). We agree with those circuit courts of appeals that have held that the Guidelines require nothing more. *See United States v. Urrego–Linares*, 879 F.2d 1234, 1237–38 (4th Cir.1989); *United States v. Wright*, 873 F.2d 437, 441–42 (1st Cir. 1989) (Breyer, J.). In addition, insofar as section 2D1.1(b) relates to a matter that would enhance the defendant's sentence, the burden of proof is on the prosecution to satisfy the factual prerequisites of the provision. *See United States v. Wilson*, 884 F.2d 1355, 1357 (11th Cir.1989); *Urrego–Linares*, 879 F.2d at 1238–39.[10]

### III. Conclusion

The United States concedes and we agree that the sentencing increments authorized by section 2D1.1(b) cannot be imposed absent a showing of scienter. Because the District Court in this case concluded that Burke's sentence could be enhanced for firearm possession notwithstanding the failure of the prosecution to show mental culpability on Burke's part, we reverse the District Court's sentencing determination and remand the case to the District Court for further proceedings. *See* 18 U.S.C.

---

10. The defendant properly bears the burden of proof under those sections of the Guidelines that define mitigating factors. *See United States*

*v. Wilson*, 884 F.2d 1355, 1357 (11th Cir.1989); *Urrego–Linares*, 879 F.2d at 1238–39.

§ 3742(f)(1). In resentencing Burke, the District Court should impose the increments authorized by section 2D1.1(b) only if it finds that the prosecution has established, by a preponderance of the evidence, that Burke possessed the firearm found in his tote bag "intentionally, recklessly or by criminal negligence." Guidelines § 1B1.3(a)(3).

*So ordered.*