**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Herman Eugene GARNER, III,**
**Defendant–Appellant.**

**No. 90–3361.**

United States Court of Appeals,
Sixth Circuit.

Submitted Nov. 26, 1990.

Decided July 23, 1991.

Linda M. Betzer, Asst. U.S. Atty., Office of the U.S. Atty., Cleveland, Ohio, for plaintiff-appellee.

Stuart J. Banks, Youngstown, Ohio, for defendant-appellant.

Before MARTIN and JONES, Circuit Judges, and ENGEL, Senior Circuit Judge.

BOYCE F. MARTIN, Jr., Circuit Judge.

Herman Eugene Garner III, appeals the sentence imposed following his guilty plea for possession of cocaine with intent to distribute in violation of 21 U.S.C. § 841(a)(1). Specifically, Garner contests the district court's two-level enhancement in his base offense for possession of a firearm. For the following reasons, we vacate Garner's sentence and remand this

matter to the district court for resentencing consistent with this opinion.

On January 6, 1989, law enforcement officers from the Mahoning County Drug Task Force searched Garner's home pursuant to a valid search warrant. The officers uncovered two safes located in the basement of Garner's home. In one safe, the officers found three kilograms of cocaine, $19,348 in cash, and some jewelry. In the another safe, located approximately twelve feet away, they found an unloaded .22 caliber single-shot Derringer. No ammunition for this weapon was present in Garner's home. On August 10, 1989, Garner was indicted by the Federal Grand Jury for possession of three kilograms of cocaine with intent to distribute it in violation of 21 U.S.C. § 841(a)(1). On March 30, 1990, Garner plead guilty to this offense.

On September 28, 1989, Garner consented to the preparation of a presentence report. The presentence report placed his base offense level at twenty-eight. Pursuant to § 2D1.1(b)(1) of the Federal Sentencing Guidelines, Garner's base offense level was increased two points because a firearm was possessed during the commission of the drug trafficking offense.

At his sentencing hearing, Garner challenged the addition of the two points to his base offense level for the possession of a firearm. Garner argued that § 2D1.1(b)(1) was inapplicable because there were no bullets for the gun found, the gun was not readily accessible to Garner because it was in the safe, and the gun found was not the usual type carried by drug dealers. The district court rejected these arguments. After a two-point reduction for acceptance of responsibility, Garner's offense level was determined to be twenty-eight, which provides for a guideline range of imprisonment between 78 and 97 months. Garner was sentenced to a 78–month term of imprisonment with four years of supervised release. Thereafter, Garner timely appealed.

◼ In cases where the applicability of an enhancement provision is contested, the government bears the burden of establishing the enhancement factors by a preponderance of the evidence. *United States v. Feinman*, 930 F.2d 495, 500 (6th Cir.1991) (citing *United States v. Silverman*, 889 F.2d 1531, 1535 (6th Cir.1989)). We review a district court's factual findings which underlie the application of a guideline provision for clear error. *United States v. Perez*, 871 F.2d 45, 47–48 (6th Cir.), *cert. denied*, 492 U.S. 910, 109 S.Ct. 3227, 106 L.Ed.2d 576 (1989). However, whether those facts as determined by the district court warrant the application of a particular guideline provision is purely a legal question and is reviewed *de novo* by this court. *United States v. Sanchez*, 928 F.2d 1450, 1458 (6th Cir.1991) (quoting *United States v. Stroud*, 893 F.2d 504, 507 (2d Cir.1990)). On appeal, Garner does not dispute the specific findings of fact made by the district court, but rather he challenges the legal significance of these facts; thus our review is plenary. *See, e.g., Braxton v. United States*, — U.S. ——, ——, 111 S.Ct. 1854, 1859, 114 L.Ed.2d 385 (1991) (noting the distinction between a finding of fact and a conclusion of law).

◼ Section 2D1.1(b)(1) of the Federal Sentencing Guidelines provides that a defendant's base offense level be increased two levels for possession of a firearm during the commission of a drug offense. Garner argues that the presence of the unloaded handgun in the locked safe in his basement does not rise to the level of "possess[ion] during commission of the offense" as contemplated by § 2D1.1(b)(1) of the Guidelines. Specifically, Garner maintains that application note 3 to section 2D1.1(b)(1) precludes a two-level enhancement in his case. Application note 3 provides, in relevant part:

The enhancement for weapon possession reflects the increased danger of violence when drug traffickers possess weapons. The adjustment should be applied if the weapon was present, unless it is  clearly improbable that the weapon was connected with the offense. For example, the enhancement would not be applied if the defendant, arrested at his residence, had an unloaded hunting rifle in the closet.

United States Sentencing Commission, *Guidelines Manual,* § 2D1.1, comment. (n.3) (Nov.1990). Garner argues that the unloaded handgun found in the safe is analogous to the hypothetical used in the application note and therefore, it was "clearly improbable" that the handgun discovered in the safe was connected to his drug offense. We agree.

There are a number of factors present in this case to make the district court's application of § 2D1.1(b)(1) problematic. First, the gun which was found in the safe is not the normal type of firearm associated with drug activity. The gun was an antique style single-shot Derringer. In fact, Garner indicated at the sentencing hearing that the gun was purchased at a flea market as a collector's piece. Furthermore, the gun was not loaded nor was any ammunition for the gun found in Garner's home. Additionally, the gun was locked in a safe which neither contained any indicia of drug paraphernalia nor was located within sufficient proximity to raise an inference of relatedness. These factors, taken together, lead us to conclude that it was clearly improbable that the gun was connected with Garner's drug offense.

As an aside, we should note that any one of these factors, standing alone, would not be sufficient to compel this conclusion. For example, in *United States v. McGhee,* 882 F.2d 1095 (6th Cir.1989), this court upheld a § 2D1.1(b)(1) enhancement in a case where firearms were found in a number of secret compartments located throughout the defendant's home. The court rejected the defendant's argument that firearms have to be readily accessible to be "connected" with the drug offense. *Id.* at 1099. Additionally, in *United States v. Burke,* 888 F.2d 862 (D.C.Cir.1989), the Court of Appeals for the District of Columbia concluded that the imposition of § 2D1.1(b)(1) is not contingent on a finding that the gun in the defendant's possession was operable. *Id.* at 869. The court rested its conclusion on the fact that the mere "display of a gun instills fear in the average citizen" and "as a consequence ... creates an immediate danger that a violent response will ensue." *Id.* (quoting

*McLaughlin v. United States,* 476 U.S. 16, 17–18, 106 S.Ct. 1677, 90 L.Ed.2d 15 (1986)). *See also United States v. Luster,* 896 F.2d 1122 (8th Cir.1990) (reaching the same conclusion as the *Burke* court). Notwithstanding these decisions, we feel that the cumulative effect of these factors compels the conclusion that it is clearly improbable that the gun found in Garner's home was connected with his drug offense.

■ It is important to emphasize that this is not a case where the government has failed to meet its burden of proof of establishing the applicability of § 2D1.1(b)(1). As this court noted in *Sanchez,* "once the government proves a defendant was in possession of a weapon, its burden is satisfied." 928 F.2d at 1460. *See also United States v. Duncan,* 918 F.2d 647 (6th Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 2055, 114 L.Ed.2d 461 (1991); *United States v. Snyder,* 913 F.2d 300 (6th Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 709, 112 L.Ed.2d 698 (1991). The government established that Garner possessed the gun during the commission of the drug offense. In fact, Garner as much as admitted his ownership of the gun through his attorney at the sentencing hearing. Instead, we find that the record in this case establishes that "it is clearly improbable that the weapon was connected to the offense." *Guidelines Manual,* § 2D1.1(b)(1) (n.3).

■ The United States has argued that several cases decided in this circuit establish that once the government proves that a defendant possessed a firearm, § 2D1.1(b)(1) automatically applies. *See, e.g., Duncan,* 918 F.2d at 651; *Snyder,* 913 F.2d at 304; *United States v. Miller,* 910 F.2d 1321, 1328 (6th Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 980, 112 L.Ed.2d 1065 (1991). A cursory reading of application note 3 of the Guidelines certainly belies this argument. Additionally, these cases do not stand for such a broad proposition, rather they merely establish that the government meets its burden of proof by proving possession on the part of the defendant. As application note 3 of the

Guidelines makes clear, once the government proves that a defendant possessed a weapon during the commission of a drug offense, the defendant can then come forward with additional evidence to demonstrate that the weapon was not connected to the offense, thus precluding the application of § 2D1.1(b)(1).

We find the circumstances in this case to be analogous to those of the hypothetical in the commentary to the Guidelines. First of all, Garner's gun was unloaded. Secondly, the gun was kept in a locked safe, similar in principle to the closet in the hypothetical; that being a place where one would likely store a gun possessed for a legal purpose. Thirdly, like the hunting rifle in the hypothetical, Garner's gun is not the type normally associated with drug activity. Under these circumstances, we find that the district court's application of § 2D1.1(b)(1) was improper. Accordingly, we remand this case to the district court for resentencing consistent with this opinion.

ENGEL, Senior Circuit Judge, concurring.

Given the unique circumstances in this case I concur, although I believe that normally in such a case I would leave the trial judge's determinations undisturbed. A Derringer is a small pistol and the defendant did in fact possess it, albeit constructively. I cannot equate a Derringer with a deer rifle and I doubt that there are very many deer hunters who would. The sentencing commission in Application Note 3 was trying to exclude a relatively innocent class of gun owners from the enhancement provision of the guidelines and so far as I know, a Derringer was always designed for use in potential human confrontation. Furthermore I was much disturbed by the evidence which showed at the time of his arrest, the defendant possessed two 9mm bullets in his pocket. This alone suggests a certain predisposition toward firearms on the part of the defendant. At the same time I understand that it is virtually certain that no one could possibly believe that a 9mm bullet could fit into a .22 caliber Derringer. Thus the evidence that the weapon was an antique collector's item and its loca-

tion when it was found adequately support the majority's conclusion that it was clearly improbable that the weapon was connected to the offense. Had the weapon itself been more accessible to the defendant or had the bullets found been capable of substitution for the normal ammunition of the Derringer, however, I am quite certain that I would have agreed with the trial judge in applying the enhancement.