1 F.3d 1242
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Terry Lee MABRY, Defendant-Appellant.
 No. 92-6244.
 United States Court of Appeals, Sixth Circuit.
 Aug. 10, 1993.
 
 Before: KENNEDY and NORRIS, Circuit Judges, and ENGEL, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Defendant Terry Lee Mabry appeals the sentence imposed upon his plea of guilty to a single charge of making a false statement in the acquisition of a firearm in violation of 18 U.S.C. Sec. 922(a)(6). Defendant was sentenced to 56 months imprisonment because the District Court found, by a preponderance of the evidence, that defendant had used the firearm in connection with the cultivation of marijuana and section 2K2.1(c)(1) (1988) of the guidelines instructs the court that "[i]f the defendant used the firearm in committing or attempting another offense," the court is to "apply the guideline in respect to such other offense." The guideline range in respect to the (uncharged) offense of cultivating marijuana was 46-57 months imprisonment. On appeal, defendant contends that the District Court erred in its application of section 2K2.1(c)(1) of the Sentencing Guidelines. While we agree that section 2K2.1(c)(1) is applicable, we also agree with defendant that there is insufficient evidence to connect him to some of the marijuana on which his sentence is based.
 
 I.
 
 2
 As previously set forth by this Court, the facts of this case are as follows:
 
 
 3
 The defendant rented a farmhouse at the end of a dead end road in the Hammonds Fork section of Knox County, Kentucky. He testified that he was fixing it up in lieu of rent. On August 1, 1988, two Kentucky State Police officers went to that area to investigate complaints of shots being fired at cars turning around at the dead end of the road. Defendant gave the police officers permission to "look around." The police conducted a complete search of the farmhouse and surrounding land. During their search of the farmhouse they discovered and seized six (6) firearms: a .22 caliber rifle; four 12 gauge shotguns; and a .45 caliber pistol. A search of the immediate area disclosed three (3) potted marijuana plants in plastic gallon milk jugs thirty-five to forty-five yards from the house in an abandoned garden. These were observed from the porch of the house. They found fifteen (15) marijuana plants drying in a barn twenty feet behind the farmhouse. Proceeding down a road leading to other outbuildings they found twelve (12) marijuana plants at the edge of an old, grown-over field approximately 250 yards from the house. The officers returned the next day at which time they found 142 marijuana plants growing in 5 or 6 different plots one-half to three-quarters of a mile away from the house and to the left of the house as you face it and up on a ridge.
 
 
 4
 State officials charged defendant with cultivating marijuana, with possession of a handgun by a felon, and for being a persistent felony offender. A federal indictment was also issued charging defendant with three counts of federal firearms violations. Count one charged defendant with receipt of a firearm by a convicted felon in interstate commerce, in violation of 18 U.S.C. Sec. 922(g)(1). Count two charged defendant with using an alias in the acquisition of a firearm, in violation of 18 U.S.C. Sec. 922(a)(6). Count three charged defendant, a convicted felon, with knowingly possessing five firearms, in violation of 18 U.S.C. Sec. 922(g)(1). Defendant was not indicted in federal court for the cultivation of marijuana. The Commonwealth of Kentucky subsequently dropped its drug charges against defendant, though at the time of defendant's sentencing hearing in the District Court, the state drug charges were still pending.
 
 
 5
 Mabry entered into a plea agreement wherein he agreed to plead guilty to Count two of the federal indictment (using an alias in the acquisition of a firearm) in exchange for dismissal of the remaining two counts against him. On June 5, 1989, the District Court sentenced defendant under the 1988 Sentencing Guidelines. The court computed defendant's base offense level by applying section 2K2.1(c)(1) of the guidelines. The 1988 version of that section stated that "[i]f the defendant used the firearm in committing or attempting another offense, apply the guideline in respect to such other offense ... if the resulting offense level is higher than that determined above." The court looked to the base offense level for the offense of possessing or cultivating 172 marijuana plants and found it was 16. Because the offense level for defendant's firearms conviction was 9, the court substituted the higher base offense level of 16 for the uncharged drug offense. The court further enhanced the base offense level by two points to account for defendant's original firearm conviction and then subtracted two points for defendant's acceptance of responsibility, to arrive at a base offense level of 16. An offense level of 16, combined with defendant's criminal history category, placed defendant in a guideline range of 46-57 months imprisonment. The court sentenced defendant to 56 months to be followed by a three-year period of supervised release.
 
 
 6
 On September 25, 1989, defendant filed an action under 28 U.S.C. Sec. 2255 challenging the swapping of the two base offense levels. Specifically, defendant argued that he should have been sentenced only on the basis of the firearm conviction and denied any connection to the cultivation of marijuana. The District Court denied defendant's section 2255 motion. On appeal from this denial, a panel of this Court was "unable to find proof linking Mabry to the marijuana," and thus, vacated defendant's sentence and remanded the case back to the District Court for an evidentiary hearing on the applicability of section 2K2.1(c)(1) (1988).
 
 
 7
 On April 9, 1992, an evidentiary hearing was held before a magistrate judge consisting of testimony from the two Kentucky police officers who conducted the searches and testimony from the defendant himself. Following the hearing, the magistrate judge found that "there were faint but discernable paths between the 142 marijuana plots and the house which the officers were able to follow." The magistrate judge inferred that Mabry's role at least was as a guard or lookout who was present on the scene to protect the marijuana crop from trespassers or others. The magistrate judge found "[m]ost importantly, paths connected the marijuana plots with the house where Mabry was bivouacked." The paths were the most important circumstance to link the contraband 142 plants to Mabry.
 
 
 8
 The District Court adopted the magistrate judge's proposed finding. The District Court then resentenced defendant to a 56-month term of imprisonment to be followed by a three-year term of supervised release.
 
 II.
 
 9
 For the purpose of sentencing, "findings of fact important to calculating defendant's offense level or criminal history must generally be made by a preponderance of the evidence." United States v. Walton, 908 F.2d 1289, 1301 (6th Cir.), cert. denied, 498 U.S. 990 (1990). This Court reviews a district court's factual findings which underlie the application of a guideline provision for clear error. United States v. Garner, 940 F.2d 172, 174 (6th Cir.1991). In finding that the defendant was involved in the cultivation of the 142 marijuana plants in the 5 or 6 plots, the magistrate judge and the District Court relied on the existence of "faint but discernible paths" between the marijuana plots and the farmhouse which the defendant rented.
 
 
 10
 There is perhaps some basis for such a finding in the presentence report prepared for defendant's initial sentencing. There, the probation officer made the following references to paths leading from the farmhouse to the marijuana patches:
 
 
 11
 (1) Officers proceeded up an old road leading from the dwelling in search of cultivated marijuana, and one of the officers found a plot which contained 12 marijuana plants in the edge of an old grown up field. These were located approximately 200 to 250 yards from the house. There was an old road leading from the house and a path leading off this road that led to the plants.
 
 
 12
 (2) On August 2, 1988, the two Kentucky State Police Troopers returned to the area and located approximately 142 plants of marijuana in 5 other plots. The marijuana was in a high state of cultivation in a field and wooded area, approximately one/half to three fourths miles from the residence. The residence is located in a deadended hollow. Paths leading from the plants were traveled leading back to the dwelling.
 
 
 13
 Joint App. at 114-15. This hearsay evidence, which the earlier panel held was insufficient to support the sentence, is contradicted by Officer McKnight's testimony at the evidentiary hearing. Specifically, the magistrate judge engaged in the following colloquy with Officer McKnight:
 
 
 14
 Q Were there any well-worn distinguishable paths to these places where the marijuana was growing?
 
 
 15
 A Not clear enough that I could say that they led to the house. You had to really search for the plots.
 
 
 16
 Joint App. at 58. When the witness says that the paths are not clear enough to say they lead to the house, we think the magistrate judge is clearly erroneous in saying that they are. Thus, as to the 142 marijuana plants growing in 5 or 6 plots about one-half to three-quarters of a mile from the farmhouse, the District Court clearly erred in disregarding the testimony of Officer McKnight and finding that "[t]he paths from the house to the marijuana plots is evidence of linkage." Joint App. at 58.
 
 
 17
 At oral argument, the government contended that it was Officer Barnett and not Officer McKnight who provided statements to the probation officer regarding the paths. The government, however, failed to question Officer Barnett about the existence of paths at the evidentiary hearing. McKnight's hearing testimony is consistent with paragraph (1) of the presentence report--an old road behind the farmhouse where defendant was staying and a path from that road to the 12 plants located in the field a few hundred yards away. But, it is inconsistent with the last sentence in paragraph (2) of the presentence report relating to paths to the 142 plants. Thus, while there is sufficient evidence to connect the defendant to the 30 plants growing in the immediate vicinity of the farmhouse, the evidence was insufficient, even by a preponderance of the evidence, to prove that defendant participated in the cultivation of the 142 marijuana plants located one-half to three-quarters of a mile away.
 
 
 18
 The District Court did not clearly err in finding that defendant was a guard or lookout to protect the marijuana plants around the farmhouse. The 30 plants around the house were valuable. The evidence adduced at the hearing established that defendant was camping out in an old run-down house (with no electricity) which was closely situated to numerous marijuana plants and contained camouflage clothing, a canteen, weapons and ammunition. Several motorists complained to the Kentucky Police about gun shots fired at their cars in the vicinity of the house where defendant was staying. The District Court inferred that these shots were warnings to trespassers and that they were fired by defendant "inasmuch as he was located in the building with firearms and ammunition, and there was no one else in the area." This finding is not clearly erroneous.
 
 III.
 
 19
 For the aforementioned reasons, defendant's sentence is VACATED and this case is REMANDED for resentencing consistent with this opinion.