UNITED STATES of America, Plaintiff–Appellee,

v.

Tommy ROBERTS, Defendant–Appellant.

No. 92–5202.

United States Court of Appeals, Sixth Circuit.

Argued Oct. 10, 1992.

Decided Feb. 26, 1993.

Rehearing and Rehearing En Banc Denied May 6, 1993.

James E. Arehart, John M. Compton, Asst. U.S. Attys., Karen K. Caldwell, U.S. Atty., Lexington, KY, Jacquelyn A. Jess, Asst. U.S. Atty. (argued and briefed), Covington, KY, for plaintiff-appellee.

Mike Dean (argued and briefed), London, KY, for defendant-appellant.

Before: KENNEDY and MILBURN, Circuit Judges; and POTTER, Senior District Judge.*

KENNEDY, Circuit Judge.

Defendant Tommy Roberts appeals his conviction of possession with intent to distribute cocaine, carrying a firearm in relation to a drug trafficking crime, and possession of a firearm by a felon. On appeal he raises the following issues: (1) whether the District Court erred in finding that Kentucky State Troopers did not violate his Fourth Amendment rights when they stopped his car near his home for investigation; (2) whether there was sufficient evidence for the jury to find that the gun found in the car driven by defendant was used "in relation to" the drug trafficking offense; (3) whether remarks made during the government's closing argument denied defendant a fair trial; (4) whether the District Court erred in determining the total offense level for defendant under the United States Sentencing Guidelines. For the following reasons, we affirm the defendant's conviction and remand for resentencing.

## I.

On the night of December 12, 1990, just before midnight, Kentucky State Police dispatcher, Steve House, received a call from a woman who stated that a man who rented from her, named Roberts, was drunk and fighting with his girlfriend on Curry Branch Road in Clay County, Kentucky. Dispatcher House then relayed the complaint to Troopers Steve Walker and Mark Hopkins, telling them that a Roberts subject was drunk, disorderly, and fighting on the Curry Branch Road. Approximately one hour later, after completing a previous call, the troopers responded to the complaint.

Trooper Walker knew defendant Tommy Roberts from previous arrests and had been to defendant's house five to ten times in the past to investigate similar complaints. Troopers Walker and Hopkins arrived at the defendant's residence just before 1:00 a.m., and observed that all the lights were out and there were no cars in the driveway. Trooper Walker believed defendant was probably in the vicinity, so the troopers decided to drive around in the area in an attempt to locate defendant. They also decided they would stop any cars they saw to ascertain if defendant was the driver. Approximately one quarter mile from the defendant's house, the troopers observed a white automobile being driven in the middle of the road and they saw the car swerve to the right. The troopers stopped the car and Trooper Walker recognized defendant as the driver of the vehicle.[1]

As Trooper Walker approached the car he shone his flashlight inside the car and saw a .38–caliber pistol in the front seat between defendant and a passenger. Walker talked to defendant and smelled alcohol on his breath. Walker then asked defendant to step out of the car, whereupon he administered three field sobriety tests which defendant failed. Walker placed defendant under arrest for driving under the influence of intoxicants. Pursuant to this arrest, Walker conducted a pat-down search of defendant and found two bags containing white powder that later tested positive for cocaine.

Defendant was charged with one count of possession with intent to distribute cocaine in violation of 21 U.S.C. § 841(a)(1); one count of using a firearm in relation to a drug trafficking offense in violation of 18 U.S.C. § 924(c)(1); and one count of being a convicted felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). The District Court denied defendant's motion to suppress the evidence obtained during the stop of his vehicle.

The jury returned a verdict of guilty on all three counts. Defendant was sentenced

---

* The Honorable John W. Potter, Senior United States District Judge for the Northern District of Ohio, sitting by designation.

1. The troopers also stopped a second car that was behind defendant's car.

as a career offender to a term of incarceration of 262 months on Count One; a term of 60 months on Count Three, to be served concurrently with the sentence imposed on Count One; and a term of 60 months on Count Two, to be served consecutively with the sentences imposed on Counts One and Three.

## II.

■ The defendant argues that the District Court erred in failing to suppress the gun and cocaine obtained as a result of the stop because neither the arresting officers, nor the police dispatcher who issued the bulletin to which the officers responded, had reasonable suspicion based on articulable facts to stop his car. This Court must apply the clearly erroneous standard to findings of fact when reviewing the ruling of a District Court on a motion to suppress evidence, *United States v. Hughes*, 898 F.2d 63, 64 (6th Cir.1990) (quoting *United States v. Coleman*, 628 F.2d 961 (6th Cir.1980)), and a *de novo* review of its legal conclusions. *United States v. Sangineto–Miranda*, 859 F.2d 1501, 1512 (6th Cir.1988). The facts known to Trooper Walker when he stopped the car were as follows:

1. Dispatcher House had received a complaint from Roberts' landlord which was relayed to Walker. House told Walker that Roberts was drunk and fighting.
2. After receiving this dispatch, the troopers arrived at Roberts' house and found no one home and no automobiles.
3. The troopers inferred that Roberts was out driving drunk.
4. Walker observed the car being driven in the middle of the road and that it swerved to the ditch line.

■ A police officer may make a brief investigatory stop of an individual so long as the stop is reasonably required. *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Specifically, "the police can stop and briefly detain a person for investigative purposes if the officer has a reasonable suspicion supported by articulable facts that criminal activity 'may be afoot,' even if the officer lacks probable cause." *United States v. Sokolow*, 490 U.S. 1, 7, 109 S.Ct. 1581, 1585, 104 L.Ed.2d 1 (1989). While the officer need not have probable cause to believe the individual has committed a crime or intends to commit a crime, the Fourth Amendment requires that the decision to stop the individual must be based on something "more substantial then inarticulate hunches." *Terry*, 392 U.S. at 22, 88 S.Ct. at 1880. In determining the validity of a challenged stop, "the totality of the circumstances—the whole picture—must be taken into account." *United States v. Cortez*, 449 U.S. 411, 417, 101 S.Ct. 690, 694, 66 L.Ed.2d 621 (1981).

In this case, Trooper Walker made a number of objective observations and possessed certain knowledge, all of which taken together gave him reasonable suspicion to stop Tommy Roberts' vehicle. Walker was answering a complaint that defendant and his girlfriend were drunk, disorderly and fighting; Walker had answered similar complaints involving defendant in the past; the house was dark and no cars were in the driveway; it was almost 1:00 in the morning; Walker observed a car one quarter mile from the defendant's residence which was being driven in the middle of the road and then swerved to the right. In *Cortez*, the Supreme Court noted that based on all the information available, "a trained officer draws inferences and makes deductions." *Cortez*, 449 U.S. at 418, 101 S.Ct. at 695. The Court stressed "the imperative of recognizing that, when used by trained law enforcement officers, objective facts, meaningless to the untrained, can be combined with permissible deductions from such facts to form a legitimate basis for suspicion of a particular person and for action on that suspicion." *Id.* at 419, 101 S.Ct. at 696. In light of Trooper Walker's previous experience with defendant, it was reasonable for him to infer that defendant was out driving drunk.

The District Court found that the troopers had reasonable suspicion, based upon the dispatch they received and the absence of persons or automobiles at the defen-

dant's residence, to think that defendant was driving drunk. The District Court further found that the troopers had reasonable suspicion to think that defendant, by driving drunk, was committing a crime at the moment of the stop. The District Court's conclusions are supported by the record.[2]

In support of his contention that a Fourth Amendment violation occurred, defendant relies on *United States v. Hensley*, 469 U.S. 221, 105 S.Ct. 675, 83 L.Ed.2d 604 (1985). This reliance is misplaced. In *Hensley*, the Supreme Court held that police may stop a person to investigate if they "have a reasonable suspicion, grounded in specific and articulable facts, that a person they encounter was involved in or is wanted in connection with a *completed* felony" *id.* at 229, 105 S.Ct. at 680 (emphasis added), but not for a *completed* misdemeanor. In this case, however, defendant was not stopped because the troopers suspected he was involved in a completed crime. The District Court correctly found that "the Troopers had reasonable suspicion to think that defendant, by driving drunk, 'was committing a crime at the moment of the stop.'" Joint App. at 46 (quoting *Adams v. Williams*, 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972)).

Thus, we agree with the District Court that Trooper Walker was entitled to stop Tommy Roberts. A difficulty arises however in that Walker did not know it was Roberts until Roberts stopped. The government argues that Roberts' erratic driving, commented on by the District Court, provided a justification for stopping the defendant's car. We agree. The dissent places great stress on the officers' intent to stop all cars. We must test the stop against the objective facts that relate to it, namely the erratic driving, not against what the officers may have intended to do even if there had been no erratic driving. Alternatively, it was inevitable that when Roberts' car passed the troopers' car on this narrow 1½ lane road, Trooper Walker would have seen that Tommy Roberts, whom he knew from earlier drunk driving arrests, was the operator.

Therefore, because the stop was legal, the District Court did not err in failing to suppress the evidence obtained as a result of that stop. After defendant flunked the sobriety tests, Trooper Walker arrested him. Thus, the pat-down search revealing the drugs was a search incident to a lawful arrest. *See, e.g., United States v. Robinson*, 414 U.S. 218, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973). Similarly, the gun observed and seized by the officers after they stopped defendant's car was in plain view. *See, e.g., Coolidge v. New Hampshire*, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971).

### III.

Defendant next argues that there was insufficient evidence for the jury to convict him of violating 18 U.S.C. § 924(c)(1), and that the District Court erred in denying his motion for judgment of acquittal. In reviewing denial of a motion for judgment of acquittal, this Court considers the evidence as a whole, taken in the light most favorable to the government, together with all legitimate inferences to be drawn therefrom to determine whether a rational trier of fact could have found guilt beyond a reasonable doubt. *United States v. Adamo*, 742 F.2d 927 (6th Cir.1984), *cert. denied*, 469 U.S. 1193, 105 S.Ct. 971, 83 L.Ed.2d 975 (1985).

■ Section 924(c)(1) provides, in pertinent part:

---

**2.** Defendant argues that the District Court's finding that the dispatcher told Walker that the defendant and his girlfriend were drunk and fighting, was clearly erroneous. Defendant bases this argument on House's testimony at the suppression hearing. House was asked, "is it fair to say that the only information that you could give to troopers in the field is that there was some sort of disturbance involving a Rob-

erts on Curry Branch?" He responded, "I think that's exactly what I gave the trooper, yes." However, Trooper Walker testified both at the suppression hearing and the trial, that they received a complaint on a Roberts subject and some other individuals drunk and fighting. Thus, the District Court's finding was not clearly erroneous.

Whoever, during and in relation to any ... drug trafficking crime ... uses or carries a firearm, shall in addition to the punishment provided for such crime ... be sentenced to imprisonment for five years....

Thus, the sole issue for this Court, is whether a rational jury could find, beyond a reasonable doubt, that defendant carried the gun "in relation to" a drug-trafficking crime. This Court has held that the words "uses" and "carries" in the statute "should be construed broadly to cover the gamut of situations where drug traffickers have ready access to weapons with which they secure or enforce their transactions." *United States v. Blankenship*, 954 F.2d 1224, 1229 (6th Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 288, 121 L.Ed.2d 213 (1992) (quoting *United States v. Acosta-Cazares*, 878 F.2d 945, 952 (6th Cir.), *cert. denied,* 493 U.S. 899, 110 S.Ct. 255, 107 L.Ed.2d 204 (1989)). In addition, a conviction under section 924(c)(1) shall be upheld by this Court:

if the possessor of a weapon intended to have it available for possible use during or immediately following the transaction, or if it facilitated the transaction by lending courage to the possessor. The defendant's sole purpose in carrying the weapon need not have been facilitation of the drug trafficking crime.

*Blankenship*, 954 F.2d at 1229 (quoting *United States v. Brown*, 915 F.2d 219, 226 (6th Cir.1990)).

The jury heard testimony that this defendant was in a remote area of a rural county in the early morning hours, while in possession of seventeen separate packages of cocaine already weighed out and ready for sale. Thus, it was reasonable for the jury to believe that defendant either had the firearm to protect himself or to facilitate the drug-trafficking offense by protecting the stash of drugs. This belief is buttressed by the fact that, before removing

the gun when the police pulled him over, defendant had carried the gun in the waistband of his trousers, immediately adjacent to the pocket containing the cocaine. Because the facts establish that defendant transported a measurable quantity of cocaine in a car which contained a loaded firearm available for use, there is sufficient evidence to support defendant's conviction. *Blankenship*, 954 F.2d at 1229.[3]

## IV.

■■■ Defendant also contends that he was denied a fair trial because of inflammatory remarks made by the government. During closing argument, government counsel made the following comments to the jury:

I submit to you ladies and gentlemen, that jurors such as you are the ones who simply have to say, enough, we've had enough of you dope dealers carrying guns in the middle of the night. We don't want you doing it in Clay County or Clark County or Scott County or Fayette County or Madison County, Montgomery County or anywhere.

Defendant's immediate objection was sustained. He asked for nothing further. On appeal, this Court should reverse a conviction based upon prosecutorial misconduct only if the resulting prejudice permeates the entire trial. *United States v. Terry*, 729 F.2d 1063, 1070 (6th Cir.1984); *United States v. Castro*, 908 F.2d 85, 89 (6th Cir. 1990) (in order to deny a defendant a fair trial, prosecutorial misconduct must be "so pronounced and persistent that it permeate[s] the entire atmosphere of the trial") (citations omitted). Furthermore, the prejudicial effect of improper comments may be negated by curative instructions to the jury. *United States v. Thomas*, 728 F.2d 313, 320 (6th Cir.1984). In *United States v. Bess*, 593 F.2d 749 (6th Cir.1979), this Court rejected a per se reversible error

---

**3.** In *Blankenship,* defendant Billy Hoyt brought 500 grams of cocaine in his truck to sell at his brother's house. Hoyt had a .357 magnum revolver in a zippered case on the front seat. This Court held that "[b]ecause the facts establish that Billy Hoyt transported a measurable quan-

tity of cocaine to his brother's house in a truck which contained a loaded firearm available for use, we conclude that there is sufficient evidence to support Billy Hoyt's conviction...." *Blankenship,* 954 F.2d at 1229.

rule in instances of prosecutorial misconduct. Rather, "the complained of conduct will not rise to *reversible* error, notably if it is not flagrant, where proof of guilt is overwhelming, where counsel does not object and/or where the trial judge steps in and admonishes the jury." *Bess,* 593 F.2d at 757.

In *United States v. Morrow,* 977 F.2d 222 (6th Cir.1992) (*en banc*), the defendant contended that remarks in the government's closing argument, referencing the jurors and their children, placing them as potential victims, denied him a fair trial. In concluding that the prosecutor's ill-chosen words did not violate Morrow's right to a fair trial, this Court found that the conduct challenged was just an isolated statement; the evidence at trial was more than sufficient for the jury to convict; and the jury received proper instructions from the trial judge. In *Morrow,* the trial judge instructed the jury to consider only the evidence, and reminded them that closing argument is not part of the evidence.

In this case, the District Court instructed the jury as follows:

You must make your decision based only upon the evidence that you saw and heard here in court....

The evidence in this case includes only what the witnesses said while they were testifying under oath; the exhibits that I allowed into evidence; the stipulations that the lawyers agreed to; and the facts that I have judicially noticed.

Nothing else is evidence. *The lawyers' statements and arguments are not evidence* ....

*Make your decision based only on the evidence as I have defined it here, and nothing else.*

(emphasis added). Based on *Morrow,* we believe these instructions were enough to negate any prejudicial effect resulting from the government's remarks.

Defendant contends, however, that the remarks in the instant case are more analogous to the comments adjudged inflammatory and prejudicial in *United States v. Solivan,* 937 F.2d 1146 (6th Cir.1991). In

*Solivan,* the government made the following remarks to the jury:

What you're listening to is a wholesale distributor of narcotics, cocaine discuss her business affairs and complain about her busy schedule, the lack of good product and the trouble she's having getting this stuff up here now. And I'd submit to you folks, that she's been caught now. And I'm asking you to tell her and all of the other drug dealers like her—(defense counsel's objection and Court's response omitted)—[t]hat we don't want that stuff in Northern Kentucky and that anybody who brings that stuff in Northern Kentucky and....

*Id.* at 1148 (emphasis omitted). This Court held that the prosecutor's appeal to the community conscience in the context of the war on drugs and his suggestion that the drug problem facing the jurors' community would continue if they did not convict the defendant, were prejudicial to the defendant's right to a fair trial and thus constituted error. *Id.* at 1155. The *Solivan* Court found that the error was not harmless and that the remarks were so prejudicial as to require a new trial.

The seminal Supreme Court case on prosecutorial misconduct during closing argument is *United States v. Hastings,* 461 U.S. 499, 103 S.Ct. 1974, 76 L.Ed.2d 96 (1983). In *Hastings,* the Supreme Court sets out the standard for when prosecutorial misconduct constitutes harmless error. According to the Supreme Court, the question is whether, absent the prosecutorial misconduct, it is clear beyond a reasonable doubt that the jury would have returned a verdict of guilty. *Id.* at 511, 103 S.Ct. at 1981. Like *Hastings,* this case involves overwhelming evidence of guilt. Even in the absence of the prosecutor's appeal to the community conscience, it is clear beyond a reasonable doubt that the jury would have returned a verdict of guilty. Therefore, the misconduct was harmless error. *Id.*

### V.

Defendant's final argument is that the District Court erred in determining his sentence.

## A.

First, defendant argues that he cannot be given an enhanced sentence as a career offender under the Sentencing Guidelines because the government failed to file an information stating its intent to seek an enhanced sentence in view of defendant's prior conviction for unlawful imprisonment, as required by 21 U.S.C. § 851. However, as defendant recognizes, this Court recently held in *United States v. Meyers*, 952 F.2d 914 (6th Cir.), *cert. denied*, — U.S. —, 112 S.Ct. 1695, 118 L.Ed.2d 407 (1992), that the government is not required to file an information with the court detailing which prior convictions the government will rely upon for sentencing enhancement under the Sentencing Guidelines. In other words, the two statutes at issue, (21 U.S.C. § 851(a)(1) and 21 U.S.C. § 841(b)(1)(C)), when read together, only require the filing of an information when a prior drug conviction is going to be used to enhance the term of imprisonment applicable to the drug offense. The District Court properly looked to the career offender provision of the Sentencing Guidelines.

## B.

Secondly, defendant argues that the District Court erred in classifying him as a career offender for sentencing purposes. This Court reviews a District Court's factual findings which underlie the application of a guideline provision for clear error. *United States v. Garner*, 940 F.2d 172, 174 (6th Cir.1991). However, whether those facts as determined by the District Court warrant the application of a particular guideline provision is purely a legal question and is reviewed *de novo* by this Court. *Id.*

Section 4B1.1 of the United States Sentencing Guidelines sets out the requirements for a person to qualify to be sentenced as a career offender:

A defendant is a career offender if (1) the defendant was at least eighteen years old at the time of the instant offense, (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense, and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense.

Defendant's prior unlawful imprisonment conviction was treated as a "crime of violence" by the District Court, which, when coupled with defendant's prior drug trafficking offense, resulted in his being sentenced as a career offender. Defendant contends that the District Court erred in treating unlawful imprisonment as a crime of violence.

As defined by section 4B1.2 of the Sentencing Guidelines:

(1) The term "crime of violence" means any offense under federal or state law punishable by imprisonment for a term exceeding one year that—

(i) has as an element the use, attempted use, or threatened use of physical force against the person of another....

Defendant was convicted on December 17, 1975, in the Kentucky Circuit Court, of unlawful imprisonment in the first degree, and sentenced to two years imprisonment. Pursuant to the Kentucky Statutes:

(1) A person is guilty of unlawful imprisonment in the first degree when he knowingly and unlawfully restrains another person under circumstances which expose that person to risk of serious physical injury.

1991 Ky.Rev.Stat. & R.Serv. 509.020 (Baldwin). Further:

(2) "Restrain" means to restrict another person's movements in such a manner as to cause a substantial interference with his liberty by moving him from one place to another or by confining him either in the place where the restriction commences or in a place to which he has been moved without consent. A person is moved or confined "without consent" when the movement or confinement is accomplished by physical force, intimidation, or deception, or by any means, including acquiescence of a victim, if he is under the age of sixteen (16), or is

substantially incapable of appraising or controlling his own behavior.

1991 Ky.Rev.Stat. & R.Serv. 509.010(2) (Baldwin). Defendant argues that it was error for the District Court to adopt a presentence report's finding that unlawful imprisonment was a crime of violence because the statute makes clear that physical force is only one method of restraining a person; unlawful imprisonment can also occur through deception or, in the case of a minor, acquiescence. Because the government does not specify the basis for defendant's unlawful imprisonment conviction, we REMAND to the District Court for a factual finding whether defendant's unlawful imprisonment conviction involved "the use, attempted use, or threatened use of physical force," thereby constituting a crime of violence.

### C.

Finally, defendant argues that his sentence, as well as the Sentencing Guidelines, contravene the governing statutes, 28 U.S.C. § 991 and § 994, and 18 U.S.C. § 3553(a). However, this Circuit recently decided that the Sentencing Guidelines do not violate the governing statutes. *United States v. Davern*, 970 F.2d 1490 (6th Cir. 1992) (*en banc*).

### VI.

For the aforementioned reasons, Roberts' conviction is AFFIRMED. The sentence is VACATED and we REMAND to the District Court for resentencing.

JOHN W. POTTER, Senior District Judge, dissenting.

It is not an easy task to dissent from an opinion by the respected majority nor to vote to suppress evidence, which ruling may free a convicted felon. Nevertheless, on the facts and the law, I am compelled to do both.

I believe that issue one is dispositive. That issue is as follows: "whether police officers may make a random stop of an automobile without reasonable suspicion, objectively gauged and based on articulable facts, that any occupants of the vehicle have committed a crime." The answer must be no, and since the stop violated the defendant's Fourth Amendment rights, the evidence arising as fruit of the unconstitutional stop and search must be suppressed.

A few comments on the facts in the case are in order. At the time of the stop, Trooper Roberts did not know who occupied the on-coming vehicle. See opinion at p. 1030. Trooper Walker, at the suppression hearing, testified that he was driving on Curry Branch Road and was checking all cars in the area. Trooper Walker stated there was no traffic violation except the on-coming car was in the middle of a one and one-half lane country road, the customary position of traffic, even a squad car. When the Roberts car came upon the squad car it swerved, an act that would seem to indicate greater prudence than meeting the squad car head on.[1] The district judge, during the suppression hearing, asked the question, "Even if he had not been driving, in your opinion *erratically*, would you have stopped him anyway for a check?" The answer was "Yes ..." Despite the trial judge's characterization, no witness had used the word "erratic."

The record establishes that prior to the stop the state troopers were not looking for a particular car or make. They were checking every car on the road. Prior to the stop, they did not know whose car it was. Prior to the stop, the troopers did not know who was in the car.

The majority asserts that, based on objective observations, including the so-called

---

1. Q. Was he violating any laws?
   A. Other than driving towards the middle of the road at the time, and then he swerved over to the ditch line. That was the only observation about his driving that I saw. We met as we were—he was coming up a hill and I was topping over a hill crest. It's a country, gravel-type road.

Q. Couldn't he have been swerving to try to keep from hitting your car?
A. That's a possibility, yes.
Q. This is a one-lane road, isn't it?
A. It's about a one-and-a-half lane road, I would—you can pass, but it's not a very wide road.
Tr. Suppression Hrg., pp. 13–14.

erratic driving, Trooper Walker had "reasonable suspicion to stop Tommy Roberts' vehicle." Of course, the Trooper did not know whose car it was or who was in it. His intent was to stop everyone on the road. In fact, even after stopping the car that fortuitously was occupied by Roberts, the Trooper stopped the next car that came along. Apparently, the only suspicious act of the driver of that car was to be on Curry Branch Road.

The trooper lacked the requisite *individualized suspicion* to make the stop in question. See *United States v. Cortez*, 449 U.S. 411, 101 S.Ct. 690, 66 L.Ed.2d 621 (1980). See also *United States v. Martinez–Fuerte*, 428 U.S. 543, 96 S.Ct. 3074, 49 L.Ed.2d 1116 (1976) at page 560, 96 S.Ct. at 3084: "to accommodate public and private interests some quantum of individualized suspicion is usually a prerequisite to a constitutional search or seizure. See *Terry v. Ohio*, 392 U.S. at 21 and n. 18 [88 S.Ct. at 1879 and n. 18]." See also *Brown v. Texas*, 443 U.S. 47, 99 S.Ct. 2637, 61 L.Ed.2d 357 (1978), as follows:

> To this end, the Fourth Amendment requires that a seizure must be based on specific, objective facts indicating that society's legitimate interests require the seizure of the particular individual, or that the seizure must be carried out pursuant to a plan embodying explicit, neutral limitations on the conduct of individual officers. *Delaware v. Prouse, supra* [440 U.S. 648] at 663 [99 S.Ct. 1391, 1401, 59 L.Ed.2d 660] [ (1978) ]. See *United States v. Martinez–Fuerte*, 428 U.S. 543, 558–562 [96 S.Ct. 3074, 3083–3085, 49 L.Ed.2d 1116] (1976).

> The State does not contend that appellant was stopped pursuant to a practice embodying neutral criteria, but rather maintains that the officers were justified in stopping appellant because they had a "reasonable, articulable suspicion that a crime had just been, was being, or was about to be committed." We have recognized that in some circumstances an officer may detain a suspect briefly for questioning although he does not have "probable cause" to believe that the suspect is involved in criminal activity, as is

required for a traditional arrest. *United States v. Brignoni–Ponce, supra,* [422 U.S. 873] at 880–881 [95 S.Ct. 2574, 2579–2581, 45 L.Ed.2d 607 (1975) ]. See *Terry v. Ohio, supra,* 392 U.S. at 25–26 [88 S.Ct. at 1882–1883]. However, we have required the officers to have a reasonable suspicion, based on objective facts, that the individual is involved in criminal activity. *Delaware v. Prouse, supra,* [440 U.S.] at 663 [99 S.Ct. at 1401]; *United States v. Brignoni–Ponce, supra* [422 U.S.] at 882–883 [95 S.Ct. at 2580–2581]; see also *Lanzetta v. New Jersey,* 306 U.S. 451 [59 S.Ct. 618, 83 L.Ed. 888] (1939).

*Id.* 443 U.S. at 51, 99 S.Ct. at 2640. See also *Delaware v. Prouse,* 440 U.S. 648, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1978).

The Government has attempted to avoid the effect of the stated intent of the troopers to conduct a "moving road check" of all cars by asserting that from the totality of the circumstances the stop was reasonable. The majority agrees. I respectfully assert that the facts do not support such a conclusion. The troopers were commendably doing their duty, but they were admittedly engaged in a roving patrol stop. See *United States v. Ortiz,* 422 U.S. 891, 95 S.Ct. 2585, 45 L.Ed.2d 623 (1974):

> Second, the circumstances surrounding a checkpoint stop and search are far less intrusive than those attending a roving-patrol stop. Roving patrols often operate at night on seldom-traveled roads, and their approach may frighten motorists. At traffic checkpoints the motorist can see that other vehicles are being stopped, he can see visible signs of the officers' authority, and he is much less likely to be frightened or annoyed by the intrusion.

> These differences are relevant to the constitutional issue, since the central concern of the Fourth Amendment is to protect liberty and privacy from arbitrary and oppressive interference by government officials.

*Id.* at 894, 95 S.Ct. at 2587. Cf. *Michigan State Police Dept. v. Sitz,* 496 U.S. 444,

110 S.Ct. 2481, 110 L.Ed.2d 412 (1990), re: stationary highway sobriety checkpoints.

The majority suggests an alternative reason to affirm, that is, Trooper Walker would have recognized Roberts as he drove past on Curry Branch Road. This holding alludes, I believe, to the inevitable discovery rule, which is an exception to the " 'fruit of the poisonous tree doctrine' where it is shown that such evidence would have been discovered even if the illegality had not occurred." 12A Fed.Proc., L.Ed. § 33:673. In *Nix v. Williams*, 467 U.S. 431, 104 S.Ct. 2501, 81 L.Ed.2d 377 (1984), the Supreme Court held that "if the prosecution can establish by a preponderance of the evidence that the information ultimately or inevitably would have been discovered by lawful means ... then the deterrence rationale has so little basis that the evidence should be received." This theory was not argued by the government, and the government has the burden on this hypothesis. Furthermore, the "inevitable" discovery of the defendant by the *same* officer who conducted the illegal stop is not, in my view, "sufficient to remove the taint" of the illegal stop. *Id.* at 448, 104 S.Ct. at 2511.

On the record, the finding of facts by the district court was clearly erroneous, and because of this, the law cited was inapplicable.

I have no disagreement as to the holding of the majority on the other issues, but based on the facts and the law it is my opinion that the stop violated the Fourth Amendment of the Constitution. I therefore respectfully dissent as to the holding on this issue.