16 F.3d 1222
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Lorenzo JACKSON, Defendant-Appellant.
 No. 92-4271.
 United States Court of Appeals, Sixth Circuit.
 Jan. 24, 1994.
 
 Before: NORRIS and SILER, Circuit Judges; OAKES, Senior Circuit Judge.*
 PER CURIAM.
 
 
 1
 Defendant, Lorenzo Jackson, appeals the district court's denial of his motion to suppress evidence seized from his car after it was stopped by the Painesville, Ohio, police based upon information in a wanted flyer issued by the Lake County Narcotics Agency ("LCNA"). For the reasons outlined below, we affirm the denial of the motion to suppress.
 
 I.
 
 2
 During the fall of 1991, the LCNA was investigating a crack house in Painesville, Ohio. On October 12, as part of that investigation, Narcotics Agent Edward Ebert circulated a flyer to law enforcement agencies concerning the possible involvement of two men in drug trafficking. The flyer included the following information:
 
 
 3
 Black B.M.W. (AQV098)
 2 Black Males
2223 YOA 1819 YOA
6' 5'6"
220 lbs 140150 lbs
Larenzo (sic) (25 cal. auto)
 (on this male)
BOTH MALES FROM CLEVELAND.
LISTING ON VEHICLE COMES BACK--1989 PLYM 4H
 
 
 4
 Ebert based the contents of the flyer upon several sources. First, an individual named "Lorenzo" had twice sold crack cocaine to a confidential informant and an undercover agent. Second, a confidential informant reported that two black males driving a black BMW had been seen entering the crack house. Police had likewise seen a BMW parked nearby, and observed two black men leave the car and deal in the sale of drugs in the driveway of the crack house. Third, the license number on the flyer was obtained from the LCNA director, who had seen a black BMW approximately one-half mile from the crack house the previous day. When checked, it came back as registered to a Plymouth.
 
 
 5
 Finally, on the day that the flyer issued, several people were arrested inside the crack house. Ebert heard that two of those arrested told agents that two black men came to the house in a black BMW the night before, threatened its occupants with a gun, and took over the crack house. They also stated that the men had promised to return that night. The physical description of the two men used in the flyer came from those arrested.
 
 
 6
 Painesville Police Sergeant Eugene Rich reviewed the flyer during a departmental roll call briefing on October 14. Several hours later, he and patrolman Richard Kline saw a black BMW being driven by a black male. The passenger seat was occupied by a white female. Rich noted that two of the letters on the license plate were different from those in the flyer, but that the numbers and first letter matched. As Rich attempted to stop the BMW, he saw defendant lean forward and reach downward with his right arm.
 
 
 7
 After defendant stopped his automobile, Rich asked defendant to step out of the car and produce his driver's license, which identified him as Lorenzo Jackson. Rich then approached the BMW and searched around the driver's side seat to determine what, if anything, defendant had hidden. There he discovered a .380 caliber automatic pistol under the floor mat. Defendant was arrested for having a concealed weapon.
 
 
 8
 At the police station, defendant was found to be in the possession of a plastic bag containing crack cocaine. As a result, he was indicted on three drug-related counts, as well as on one count of possession of a firearm in relation to a drug-trafficking offense. His motion to suppress evidence seized from his car, based upon lack of cause to stop and search him, was overruled. He appeals from that ruling.
 
 II.
 
 9
 Defendant argues that the evidence found in his car should be suppressed because the police lacked sufficient information to support the reasonable suspicion needed to stop his car. This claim encompasses three issues: whether the LCNA possessed information that would justify a reasonable officer in stopping defendant's automobile; whether the officers acted reasonably when they predicated their stop of defendant's car upon the flyer issued by LCNA; and whether the officers conducted a reasonable search of the car.
 
 
 10
 In reviewing a trial court's denial of a motion to suppress, this court must accept the court's findings of fact unless clearly erroneous, but may review legal conclusions de novo. United States v. Roberts, 986 F.2d 1026, 1029 (6th Cir.), cert. denied, 114 S.Ct. 271 (1993).
 
 
 11
 Probable cause is not necessary to detain the occupants of an automobile in order to identify a person about whom there exists reasonable suspicion of past criminal involvement. See United States v. Hensley, 469 U.S. 221, 227-29 (1985). To determine whether an officer possessed this reasonable suspicion, a court must review the totality of the circumstances, United States v. Cortez, 449 U.S. 411, 417 (1981), and give due weight to specific reasonable inferences which the officer is entitled to draw from the facts in light of his experience. Terry v. Ohio, 392 U.S. 1, 27 (1968).
 
 
 12
 As already noted, the contents of the flyer were drawn from several independent sources, each of which gave rise to a suspicion of criminal involvement. Given the totality of the circumstances, these facts establish an articulable suspicion justifying use of the flyer for an identification stop. See Hensley, 469 U.S. at 226.
 
 
 13
 The next question before us is whether it was reasonable to stop defendant's car based upon the information in the flyer. The district court noted that the automobile resembled the description in the flyer because it was a black BMW with a license plate close to that listed. The court also concluded that defendant fit one of the descriptions in the flyer. These factual findings are not clearly erroneous and, therefore, the officers' decision to make an identification stop was reasonable.
 
 
 14
 The final issue concerns the search of the passenger compartment. After a stop based upon reasonable suspicion, an officer may search the passenger compartment of a car in order to ensure his own safety if he believes the suspect to be armed or dangerous. Michigan v. Long, 463 U.S. 1032, 1048-49 (1983); Adams v. Williams, 407 U.S. 143, 146 (1972).
 
 
 15
 The district court concluded that the search of the passenger area was reasonable because one of the officers had seen defendant lean downward as if to hide something. This court has previously upheld a search of the areas where a weapon might be hidden in the passenger compartment of an automobile, because an officer "observed [defendant] moving his right arm quickly while being ordered from the car." United States v. Cochran, 939 F.2d 337, 339 (6th Cir.1991), cert. denied, 112 S.Ct. 1166 (1992).
 
 
 16
 In this case, it is likewise clear that the officer had an objective basis for believing that he was in danger. The officer saw defendant move his hand downward in a suspicious manner, he became aware almost immediately after the stop that defendant's first name matched one of the names on the flyer, and he was aware that the flyer stated that one of the suspects was carrying a weapon. Under such conditions, a protective search of defendant's automobile is warranted.
 
 
 17
 The Supreme Court has held that "[t]he scope of the search must be 'strictly tied to and justified by' the circumstances which rendered its initiation permissible." Terry, 392 U.S. at 19. This was not a routine traffic stop; instead, it was for the purpose of identifying a suspected drug dealer who was reasonably believed to be armed and dangerous.
 
 III.
 
 18
 For the foregoing reasons, the conviction and sentence of defendant are affirmed.
 
 
 
 *
 The Honorable James L. Oakes, Senior United States Judge for the Second Circuit Court of Appeals, sitting by designation