39 F.3d 1182
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Teddy LARDELL, Defendant-Appellant.
 No. 93-4280.
 United States Court of Appeals, Sixth Circuit.
 Oct. 31, 1994.
 
 Before: KEITH, WELLFORD, and DAUGHTREY, Circuit Judges.
 PER CURIAM.
 
 
 1
 The defendant, Teddy Lardell, was sentenced to 180 months in prison after a jury convicted him of two counts of making false statements in the acquisition of firearms, two counts of possession of a firearm by a felon, and one count of interference with commerce by violence (robbery). He challenges the voluntariness of his oral statement made to an A.T.F. agent, and he argues that the court erred by refusing to grant him a mistrial based on prosecutorial misconduct. We find no error and affirm.
 
 I.
 
 2
 The facts concerning the commission of the offenses for which Lardell was convicted are not challenged, as such, on appeal. His conviction was based on the piecemeal testimony of many witnesses, among them a co-defendant named Jeffrey Harris, who successfully negotiated a plea agreement with the government in exchange for his promise to testify against Lardell.
 
 
 3
 The cumulative effect of the testimony at trial linked the defendant to gun purchases on two occasions from Mary Testa, a former gun dealer who, at the time, had surrendered her firearms dealer's license and was in the process of liquidating her inventory. She identified Lardell as the purchaser and testified that he bought the guns in question on October 6 and 15, 1992. On February 23, 1993, Mary Testa and her husband were robbed by three masked gunmen.
 
 
 4
 According to the testimony of a fingerprint expert, an ATF form signed by a "Teddy Lardell" on October 15 bore the defendant's fingerprints. Although this witness could not positively identify prints from a form seemingly signed by Lardell on October 6, the form did in fact bear the defendant's name. Harris and other witnesses provided strong circumstantial evidence linking Lardell to the February robbery.
 
 
 5
 In addition, ATF Agent Charles Turner testified that he interviewed Lardell on November 7, 1992, after he had been arrested on charges unrelated to these convictions. Turner testified that he had advised Lardell of his rights and that Lardell initialled a waiver form. He said that Lardell admitted prior convictions for burglary, aggravated assault, and carrying a concealed weapon. Turner then asked Lardell about certain gun purchases, and the defendant admitted buying guns on October 15, 1992, signing an ATF form to do so, and later selling the guns for $120 each. Lardell denied making the October 6 purchases, however.
 
 II.
 
 6
 During a pretrial hearing on the admissibility of Lardell's statement to Turner, Turner insisted that Lardell did initial a waiver of his Miranda rights, saying that he preferred to use his initials rather than to sign his name. Turner testified that Lardell did not appear anxious or tired, did not request an attorney, did not ask Turner to stop the interview, and did not ask for food or drink. Turner admitted that he was the only person in the room with the defendant during the interview and that he was armed, but insisted that he removed the defendant's handcuffs. He testified that although he had not yet received scientific evidence that Lardell's fingerprint was on the A.T.F. form, he might have told Lardell that the print was on the form. Agent Turner also admitted that after he requested Lardell's identification, allegedly to ensure that he was interviewing the right person, he might have said that he thought Lardell's signature on his identification card matched the signature on the A.T.F. form. Turner testified that he told Lardell that if he cooperated, Turner would inform the United States Attorney, and indicated that Lardell might be charged with possession of firearms by a felon and giving false information on an A.T.F. form. Turner, however, insisted that he mentioned Lardell's possible cooperation with the government only after Lardell admitted the October 15 purchases. He also insisted that the interview lasted no more than 30 to 40 minutes.
 
 
 7
 At the hearing, Lardell recalled the interview differently. Although he did not testify at trial, he testified at the suppression hearing that Agent Turner did not read him his rights before interviewing him about whether he had bought firearms or knew any dealers in firearms. Lardell denied initialling the forms indicating a waiver of his right to refuse a police interview. According to Lardell, Turner laid his gun on the desk, told Lardell that he had been identified as the purchaser of guns, that his fingerprints were on an A.T.F. form, and that Turner believed that the signature on the A.T.F. form was Lardell's. Lardell stated that Turner suggested that the defendant identify other people in order to get the charges against him dropped. He stated that Turner mentioned that Lardell was facing prison, and that he would be taken from his family. The defendant insisted that he was tired during the interview, first because the police had awakened him in the middle of the night, but later because he had been awake for 20 hours before the interview. Lardell argues that Agent Turner overpowered his will during an hour-and-a-half interview, and forced him to admit his prior convictions and his October 15 gun purchases involuntarily.
 
 
 8
 The defendant argues on appeal that the district court erred when it refused to suppress his oral statement to Agent Turner, both because of the agent's noncompliance with Miranda and because his statement was involuntary. We find no error in this regard. Although there was conflicting testimony concerning the agent's interview with Lardell, the district court was in the best position to hear the evidence, to weigh it, and to determine issues of credibility. After a careful study of the record under the standards of review set out in United States v. Rigsby, 943 F.2d 631, 635 (6th Cir.1991), cert. denied, 112 S.Ct. 1269 (1992), we find no basis upon which to disturb the district court's decision to deny the defendant's motion to suppress.
 
 III.
 
 9
 As to the other issue raised on appeal, the defendant contends that the government's final argument was tainted by three improper comments, so prejudicial in nature that they amounted to prosecutorial misconduct. During argument, the government referred to defense objections, made out of the jury's presence, to items of evidence about the robbery. The defendant objected that the prosecutor was not referring to the testimony, but to evidentiary objections. Although the court did not correct the prosecutor, in response to the defendant's motion for a mistrial the court stated that the jury would have no way of knowing that the government's reference to the defendant's "objections" to the evidence referred to legal objections.
 
 
 10
 The defendant also argues that the government improperly suggested that he could be responsible for possession of firearms that were in a Bronco that Jeffrey Harris stole. The government stated that "if [the guns in the Bronco] were the same guns that Jeffrey Harris saw later that same night [on February 23, 1993, they] were still firearms." The defendant objected, believing that the jury might think him responsible for possession of guns found in the Bronco for which he was not charged. The court, therefore, instructed the jury that
 
 
 11
 if the jury believes the testimony of Harris about the alleged theft of the Blazer, and the fact that the Blazer contained weapons, ... that testimony of Jeffrey Harris in no way supports [the counts relating to the robbery].
 
 
 12
 Finally, the defendant objected to the government's reference to his previous convictions as "uncontested" at trial. According to the defendant, this statement was an attempt to shift the burden to the defendant to contest his prior convictions, when the burden to prove the convictions rested with the government. The court interrupted the government's argument to explain that the burden remained on the government to prove Lardell's prior convictions. Later, in ruling on defendant's motion for a mistrial, the court added that the defense counsel seemed to concede the convictions when he said that the defendant was someone "he wouldn't take home to dinner."
 
 
 13
 This court reviews denials of motions for mistrial for an abuse of discretion. United States v. Jackson, 990 F.2d 251, 255 (6th Cir.1993). In United States v. Hasting, 461 U.S. 499 (1983), the United States Supreme Court held that when reviewing a case for prosecutorial misconduct, an appellate court must ask whether "it is clear beyond a reasonable doubt that the jury would have returned a verdict of guilty[.]" Id. at 511. See also United States v. Roberts, 986 F.2d 1026, 1032 (6th Cir.), cert. denied, 114 S.Ct. 271 (1993). This court will not reverse a criminal conviction based solely on a prosecutor's comments, but will consider "whether the statements [of the prosecutor] affected the fairness of the trial". Jackson, 990 F.2d at 255. In Jackson, the court added that "[p]rosecutorial misconduct 'must be so pronounced and persistent that it permeates the entire atmosphere of the trial." Id. (quoting United States v. Mahar, 801 F.2d 1477, 1503 (6th Cir.1986)). See also Ledbetter v. United States, No. 93-4227, 1994 WL 511213, at * 7 (6th Cir. Sept. 21, 1994).
 
 
 14
 In this case, the defendant cites three prosecutorial errors which he alleges to have "permeate[d] the entire atmosphere of the trial." We disagree. The district court corrected any misimpression made by two of the three challenged prosecutorial arguments. The evidence of the defendant's deceptive purchase and possession of firearms was clear, moreover, and the testimony of various witnesses implicated the defendant in the robbery. We conclude that without the prosecutor's allegedly improper comments, the jury would have found the defendant guilty beyond a reasonable doubt.
 
 
 15
 For the reasons set out above, we AFFIRM the judgment of the district court.