NOT RECOMMENDED FOR PUBLICATION
File Name: 13a0107n.06

No. 12-1140

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | **FILED** |
| | ) | ***Jan 30, 2013*** |
| Plaintiff-Appellee, | ) | DEBORAH S. HUNT, Clerk |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| PETER SIMONE, | ) | WESTERN DISTRICT OF MICHIGAN |
| | ) | |
| Defendant-Appellant. | ) | |

**Before: SUTTON and STRANCH, Circuit Judges, and STEEH, District Judge**[*]

STEEH, District Judge. A federal jury convicted Peter Simone of conspiracy, bank fraud, and aggravated identity theft. He appeals the district court's denial of his motion to suppress and upward variance in the 48-month sentence imposed for the conspiracy and bank fraud counts. Finding his claims without merit, the district court is AFFIRMED.

On May 2, 2011, Sergeant Lound of the Meridian Township Police Department (MTPD) effectuated a traffic stop of Simone and co-defendant Kimberly Kirkby. Lound made the stop based on a description of the two individuals and the vehicle they were driving that had been broadcast by MTPD dispatch regarding an attempt to cash a stolen check at a Meridian Township Bank of America branch.

The Fourth Amendment allows law enforcement officers to stop citizens as long as they have reasonable suspicion to believe that a crime has been committed and the person being stopped

---

[*] The Honorable George Caram Steeh, United States District Court Judge for the Eastern District of Michigan, sitting by designation.

committed the crime. *See Terry v. Ohio*, 392 U.S. 1, 20-22 (1968). Where the officer "lacks probable cause, but possesses a reasonable and articulable suspicion that a person has been involved in criminal activity, he may detain the suspect briefly to investigate the suspicious circumstances." *United States v. Bentley*, 29 F.3d 1073, 1075 (6th Cir. 1994). The totality of the circumstances must be evaluated to determine the validity of a *Terry* investigative stop. *United States v. Martin*, 289 F.3d 392, 396 (6th Cir. 2002) (citing *United States v. Roberts*, 986 F.2d 1026, 1029 (6th Cir. 1993)).

Sergeant Lound, a 24-year veteran of MTPD, stopped Simone's vehicle based on the information he received from dispatch, his experience as a road patrol sergeant, and what he witnessed while he followed the vehicle. The dispatch report referred to the Bank of America branch on Grand River Avenue, which was less than two miles from Lound's location on road patrol. The report further stated that a male was driving a white Chevrolet Impala with a female passenger, heading east on Grand River. Lound used his knowledge of the area and his experience as a road patrol officer and sergeant to determine that the white Impala he observed driving eastbound on Grand River was at a location consistent with the time that had passed and the posted speed limit on that road.

Lound testified that Simone reacted to being followed by a police vehicle by speeding up and making an erratic turn onto another street. Simone's reckless turn provides additional support for a *Terry* investigative stop. Based on all of the circumstances known to Lound at the time of the stop, he acted reasonably in determining that the Impala he stopped was the one described by the dispatcher as containing the individuals who attempted to commit a fraud on the bank.

"[A]n investigative detention must be temporary and last no longer than is necessary to effectuate the purpose of the stop." *United States v. Davis*, 430 F.3d 345, 354 (6th Cir. 2005)

2

(quoting *Florida v. Royer*, 460 U.S. 491, 500 (1983)) (internal quotation marks omitted). The scope of activities conducted during an investigatory stop "must reasonably be related to the circumstances that initially justified the stop." *United States v. Richardson*, 949 F.2d 851, 856 (6th Cir. 1991). The Supreme Court has stated that "[i]n assessing whether a detention is too long in duration to be justified as an investigative stop, we consider it appropriate to examine whether the police diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly, during which time it was necessary to detain the defendant." *United States v. Sharpe*, 470 U.S. 675, 686 (1985).

Within moments of making the traffic stop, Sergeant Lound knew that the occupants of the Impala matched the description of a white man and woman, that the man was driving, and that the man had a dark tan and buzz-cut hair. The vehicle had Pennsylvania plates, although the driver had a Florida driver's license. The driver attempted to evade Lound when he realized he was being followed. When stopped by Lound, the driver appeared nervous and lied about heading home from a Target store in East Lansing, which Lound knew not to exist. *See United States v. Torres-Ramos*, 536 F.3d 542, 553 (6th Cir. 2008) (officer's initial information justified investigatory traffic stop, and additional facts learned justified expansion of the detention beyond its original scope).

Sergeant Lound reasonably suspected the Impala's occupants of attempting to defraud the bank, so bringing the bank employees to make a potential eyewitness identification is directly related to the brief investigation. A 15-minute wait for the officers to arrive with the employees was reasonable in this case. *See United States v. Garcia*, 496 F.3d 495, 504 (6th Cir. 2007) (duration of investigatory stop was reasonable where canine sniff performed within half an hour of the stop).

3

Officers searched Simone's vehicle and seized evidence minutes before the bank employees arrived and identified Simone as the suspect of the attempted fraudulent check scheme. Simone and Kirkby were then arrested. Upon effectuating an arrest, it is MTPD protocol to impound the vehicle and conduct an inventory search. (Page ID #730)

The doctrine of inevitable discovery is an exception to the exclusionary rule and allows a court to admit evidence that is otherwise illegally obtained if the evidence inevitably would have been discovered through independent, lawful means. *Nix v. Williams*, 467 U.S. 431, 443-44 (1984). There is nothing speculative about the inevitable lawful discovery in this case because it was mandated by a standard police protocol. Once the bank employees identified Simone, Lound had probable cause to arrest and the inventory search would have happened without regard to any allegedly unlawful search. *See United States v. Kennedy*, 61 F.3d 494, 497-98 (6th Cir. 1995).

Defendant proceeded to a jury trial and was convicted of all counts on October 20, 2011. (R. 57) The Presentence Report (PSR) recommended that the district court impose guidelines enhancements based on loss amount, theft from a person, and for sophisticated means, under USSG §§ 2B1.1(b)(1)(B), (b)(3), and (b)(10)(C). (Page ID #778) Neither the PSR nor the parties addressed whether the obstruction of justice enhancement under § 3C1.1 should apply. The week before sentencing, the district court notified the parties that it was considering imposing a sentence above the guidelines. (Page ID #912)

At sentencing, the district court applied not only the loss, theft, and sophisticated means enhancements, but also the two-level enhancement for obstruction of justice. (Page ID #896) The court premised this last calculation on Government trial exhibits that consisted of post-arrest notes from Simone to co-defendant Kirkby urging her either not to talk with law enforcement or to

4

affirmatively lie by exculpating him. (Page ID #895-96) Commenting on one such note, which stated, "[t]ell them in court that I had nothing to do with anything," the district court noted, "[a]t the very least that's obstruction of justice. It may even be suborning perjury." (Page ID #896)

The enhancements resulted in a criminal history category IV and an offense level of 15, which produced an advisory range of 30 to 37 months on Counts 1 and 2. Simone objected to the obstruction enhancement. He argued that he should receive a sentence below the guidelines because co-defendant Kirkby had been more involved in the conspiracy but had received only a one-year sentence. (Page ID #898)

Before imposing a sentence, the district court noted the advisory nature of the guidelines, considered the "extensive, elaborate [and] serious" nature of the scheme, and noted the serious nature of identity-theft as a species of fraud. (Page ID #909-910) The court assessed the scope and nature of defendant's "lengthy criminal history of theft offenses, of drugs, and of violence," concluding it was "really not a very pretty picture overall." (Page ID #910) The district court imposed a 48-month sentence on Counts 1 and 2, which was 11 months over the advisory guidelines range, followed by the mandatory 24-month sentence for Count 3. (Page ID #911)

This court has held that a sentence is procedurally unreasonable if the district court incorrectly calculates the guideline scoring range, finds the guidelines to be mandatory, fails to consider § 3553(a) factors, selects a sentence based on clearly erroneous facts or fails to adequately explain a sentence. *United States v. Baker*, 559 F.3d 443, 448 (6th Cir. 2009). In this case defendant argues that the court improperly enhanced the adjusted offense level by relying on exhibits that had been redacted for trial and that were therefore incomplete, and that the court did not adequately explain the basis for its ruling.

5

The exhibits were admitted at trial and therefore were part of the record in this case. It was not unreasonable for Judge Neff, as the sentencing judge, to consider the notes in the context of the case as a whole in calculating the appropriate Guideline range. As for explaining the basis for her ruling, Judge Neff made clear that she felt Simone did not accept responsibility in this case, and in fact attempted to obstruct justice and possibly to suborn perjury. (Page ID #896) Judge Neff explained that her reasons for going 11 months over the Guideline range were to deter and to protect the public, given her strong belief that Simone was likely to reoffend. (Page ID #911)

Simone's substantive due process argument is based on the disparity of his sentence compared to Kirkby's sentence. "A district judge is not required to consider the disparity between the sentences of co-defendants." *United States v. Wallace*, 597 F.3d 794, 803 (6th Cir. 2010). The district court stated its reasoning for imposing a sentence that was 11 months above the advisory guidelines range: "I think that to deter, to protect the public, particularly as I said in response to my belief that Mr. Simone's history makes him highly likely to reoffend, . . . we therefore need to keep him out of circulation for as long as possible." (Page ID #911) The disparity between Simone's and Kirkby's sentences is readily explained by the fact that Simone's criminal history was far more extensive than Kirkby's, and Kirkby received a three-level downward departure for testifying at trial and providing substantial assistance that resulted in sentences for others involved in the overarching fraud conspiracy.

Accordingly, we AFFIRM the district court's judgment.