16 F.3d 1221
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Cornelius S. CARTER, Defendant-Appellant.
 No. 93-3858.
 United States Court of Appeals, Sixth Circuit.
 Feb. 11, 1994.
 
 Before: KENNEDY and GUY, Circuit Judges; and FEIKENS, Senior District Judge*.
 PER CURIAM.
 
 
 1
 Defendant, Cornelius Carter, entered a plea of guilty to a four-count indictment. Two of the counts charged a violation of 18 U.S.C. Sec. 922(a)(6), the use of false statements when purchasing a firearm. The other two counts charged a violation of 18 U.S.C. Sec. 922(g), possessing a firearm after having been previously convicted of a violent offense.
 
 
 2
 The presentence report recommended a base offense level of 20. Defendant contended it should have been 14. The disagreement between the government and the defendant revolved around whether the defendant, within the last 15 years, had been incarcerated as a result of a crime of violence. If he had been so incarcerated, there is no disagreement that the correct base offense level is 20.
 
 
 3
 The district judge held a hearing, after which he concluded that the appropriate base offense level was 20. It is from this determination that defendant appeals.
 
 
 4
 Upon review, we conclude that the district court's decision is based upon a factual determination. Since we cannot conclude that this determination is clearly erroneous, we affirm.
 
 I.
 
 5
 Carter was convicted in 1969 of armed robbery and sentenced to a term of 10 to 25 years' custody. On March 13, 1975, Carter was paroled. Shortly thereafter, he was convicted in state court of breaking and entering an unoccupied structure and escape. Within this same time frame, Carter also was convicted of a federal postal offense, possession of stolen mail. Carter received a state sentence of one to five years on the breaking and entering offense, one-half to five years on the escape offense, and five years' custody on the federal offense to run concurrently with the state offense. From January 9, 1976, until June 9, 1978, Carter served these sentences in a federal institution.
 
 
 6
 In June 1978, Carter was paroled on the federal offense, but was released to state custody, pursuant to a detainer that had been filed, to serve the remainder of his state sentences. In October 1978, Carter was paroled again on his state sentences, and in December 1979 all state parole was terminated.
 
 II.
 
 7
 The base offense levels for firearm offenses are found in section 2K2.1 of the sentencing guidelines. Defendant contends that his base offense level should have been computed pursuant to U.S.S.G. Sec. 2K2.1(a)(6), which provides for a level of 14 if the only aggravating factor is a previous felony conviction. The government argues that U.S.S.G. Sec. 2K2.1(a)(4)(A) controls, which provides for a base offense level of 20 if the defendant "had one prior felony conviction of either a crime of violence or a controlled substance offense."
 
 
 8
 It is agreed by all parties that defendant's armed robbery offense was a crime of violence. However, the sentencing guidelines also provide as follows:
 
 
 9
 (e) Applicable Time Period
 
 
 10
 (1) Any prior sentence of imprisonment exceeding one year and one month that was imposed within fifteen years of the defendant's commencement of the instant offense is counted. Also count any prior sentence of imprisonment exceeding one year and one month, whenever imposed, that resulted in the defendant being incarcerated during any part of such fifteen-year period.
 
 
 11
 U.S.S.G. Sec. 4A1.2(e)(1).
 
 
 12
 The trial judge had to resolve the question of whether defendant had been incarcerated on the armed robbery offense at any time during the 15 years preceding defendant's commission of the offense for which he was being sentenced. Although Carter was paroled on the armed robbery conviction in 1975, there is no dispute that if this parole was subsequently revoked and Carter served any time within the 15-year period at issue related to the robbery offense, then the correct base offense level would be 20, as argued by the government.
 
 III.
 
 13
 Where the applicability of a sentencing enhancement provision is at issue, the government bears the burden of establishing the enhancement factors by a preponderance of the evidence. United States v. Garner, 940 F.2d 172 (6th Cir.1991). If the resolution of an enhancement dispute is based on a factual determination made by the sentencing judge, we review under a clearly erroneous standard. United States v. Williams, 940 F.2d 176, 181 (6th Cir.), cert. denied, 112 S.Ct. 666 (1991).
 
 
 14
 At the sentencing hearing, the government was unable to offer any explicit documentary evidence that the defendant's parole had been revoked. This inability is the basis of defendant's contention that the government did not prove by a preponderance of the evidence that the appropriate base offense level should be 20.
 
 
 15
 The government's proofs consisted of the testimony of federal supervisory probation officer Monroe Snyder and certain state documents relating to Carter. Snyder had been in the Toledo, Ohio, probation office since 1973, and had been a supervisor since 1984. Although a federal probation officer, he was familiar with Ohio penal and parole procedures.
 
 
 16
 At the hearing, when Snyder was asked about the documentation that convinced him 20 was the appropriate base offense level, he responded:
 
 
 17
 A. Well, the documentation that I have revealed that on that 10 to 25 year sentence, Mr. Carter was paroled and incarcerated in 1975. In 1974-1975, he experienced two state arrests and convictions and one federal arrest and conviction and ended up receiving on the state conviction breaking and entering and escape, and he ended up with one-and-a-half to ten years or 11 years--and I would have to look at my records--but anyway, they were served consecutively.
 
 
 18
 He then received a five year federal sentence, and the state[']s convictions were ordered served consecutively with each other but concurrently with the federal sentence. He went into federal custody. He was paroled from federal custody to the state sentences.
 
 
 19
 Now, when he came into state custody--and that was in June of 1978--the two state convictions from 1975 were aggregated with the armed robbery conviction from 1979. In effect, he was serving three sentences.
 
 
 20
 Q. So he was on parole for the aggravated robbery?
 
 
 21
 A. Yes.
 
 
 22
 Q. And that parole was violated when he got the two sentences as well [as] the federal sentence?
 
 
 23
 A. Right. So when he ended up back in state custody in 1978, they aggregated the three state sentences resulting in a sentence of 11-and-a-half to 35 years, and he was on parole.
 
 
 24
 He was in state custody from, I believe, June of '78 until he was reparoled on the state [sentence] in October '78. He was on parole on the three convictions until final discharge, which was sometime in 1979.
 
 
 25
 (App. 33-34).
 
 
 26
 On cross-examination, the following exchange occurred:
 
 
 27
 Q. Would you agree, then, that it cannot be certainly said that any of the time that Cornelius served between late 1975 and 1978--or at any time thereafter--directly resulted from the armed robbery conviction in 1979?
 
 
 28
 A. No, I can't say. The records I have lead[ ] me to conclude that he was still responsible for the 10 to 25 year sentence until he was released from that sentence along with the other two sentences in 1979.
 
 
 29
 Therefore, it is my conclusion that in 1978 when he came back into state custody he was still serving the armed robbery sentence along with the two other 1975 convictions.
 
 
 30
 (App. 45-46).
 
 
 31
 Next, on re-direct examination, Probation Officer Snyder testified:
 
 
 32
 Q. You had an opportunity to review Government's Exhibit 1, the records you have reflecting Mr. Carter's prior offense of violence?
 
 
 33
 A. Yes.
 
 
 34
 Q. You are familiar with how the Ohio Parole Authority operates, are you not?
 
 
 35
 A. Yes.
 
 
 36
 Q. And you are familiar with how the Ohio Correction System operates regarding how inmates serve sentences and parole violations, correct?
 
 
 37
 A. Yes, I have a working knowledge of that.
 
 
 38
 Q. Now based on the records you have, which show he has an 11-and-a-half to 35-year sentence, is there any other reason that a violation of his parole on the 25-year sentence--that those records would reflect that?
 
 
 39
 A. No.
 
 
 40
 Q. So that's the only reason that those records could reflect--
 
 
 41
 A. Right.
 
 
 42
 Q. --that 35-year maximum, correct?
 
 
 43
 A. Correct.
 
 
 44
 Q. And those documents that were generated in 1979, Government's Exhibit 1, again, the only reason they would reflect that 35-year maximum is because there had been a violation of his 1969 or 1968 robbery charge?
 
 
 45
 A. Yes.
 
 
 46
 (App. 50-51).
 
 
 47
 Finally, on re-cross, the following was elicited:
 
 
 48
 Q. Okay. And, in fact, you have not seen any documents that directly show that Mr. Carter served any time from January of 1977 to the present which resulted from that 1969 armed robbery conviction?
 
 
 49
 A. I have--okay. I have not seen documents, other than what's here. What is here and what has been introduced show three sentences that he was serving, the aggregate of which is 11-and-a-half to 35 years, leading me to believe and to conclude that he--it was noted right on the documents that he is serving a sentence for escape, breaking and entering, and armed robbery. It is on the documents, and, therefore, it is my conclusion that he was serving the armed robbery sentence.
 
 
 50
 (App. 52).
 
 
 51
 By and large, this is the extent of what the district judge had before him. He concluded that probation supervisor Snyder's interpretation of the relevant documents was correct and determined the base offense level to be 20. Although one might arguably reach a different conclusion, we cannot say that Judge Young was clearly erroneous in reaching the conclusion he did.[1]
 
 
 52
 AFFIRMED.
 
 
 
 *
 Honorable John Felkens, United States District Court for the Eastern District of Michigan, sitting by designation
 
 
 [1]
 Although it is not the basis of our decision, we note in passing that defendant may be better served by this affirmance than he would have been in a remand for resentencing. At the original sentencing, the government argued convincingly for an offense level of 26 and a guidelines range of 120 to 150 months based upon defendant's very extensive criminal history. The court elected not to make this kind of upward departure, and fixed the base offense level at 17 with a criminal history category of 6, resulting in a sentencing range of 51 to 63 months