82 F.3d 419
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Larry BENTLEY, Defendant-Appellant.
 No. 95-3337.
 United States Court of Appeals, Sixth Circuit.
 April 4, 1996.
 
 Before: KENNEDY, WELLFORD and MOORE, Circuit Judges.
 
 ORDER
 
 1
 This is a direct appeal from the imposition of a second criminal sentence pursuant to a remand from this court for that purpose. The parties have agreed to waive oral argument and, upon examination, this panel unanimously agrees that oral argument is not needed. Fed.R.App.P. 34(a).
 
 
 2
 In 1993, Larry Bentley was convicted after a guilty plea of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g), and knowingly receiving, concealing, or storing a stolen firearm, in violation of 18 U.S.C. §§ 922(j) and 924(a)(2). Bentley was sentenced pursuant to 18 U.S.C. § 922(e) as a felon in possession of a firearm after having been convicted of three or more violent felony offenses. The district court sentenced Bentley to an aggregate 190 month term of imprisonment. On appeal, a panel of this court affirmed the conviction but remanded for resentencing as one of Bentley's three predicate Ohio state felonies did not meet the definition of a "violent felony offense" for § 922(e) purposes. United States v. Bentley, 29 F.3d 1073 (6th Cir.), cert. denied, 115 S.Ct. 604 (1994).
 
 
 3
 In 1995, the district court proceeded to sentence Bentley in light of this court's mandate. The court held a hearing on disputed portions of the presentence report and concluded that Bentley should receive a guideline sentence of 120 months incarceration. This appeal followed.
 
 
 4
 On April 15, 1992, Bentley was apprehended in his automobile by agents investigating Bentley's attempt to sell a large number of what the agents suspected to be stolen handguns. The agents found nine handguns in the automobile and an additional 109 handguns in Bentley's apartment, all of which had in fact been stolen.
 
 
 5
 Bentley has an extensive criminal history. Four of his Ohio state felony convictions are relevant to this appeal. On May 16, 1974, Bentley was convicted of Breaking and Entering in Logan County. On August 15, 1974, Bentley was convicted in Montgomery County of Breaking and Entering. He was convicted in Stark County of Aggravated Robbery on October 22, 1974. Finally, Bentley was convicted of Breaking and Entering on February 6, 1989, in Muskingum County.
 
 
 6
 Bentley was originally sentenced under the provisions of the Armed Career Criminal Act (ACCA), 18 U.S.C. § 924(e), an enhancement reflecting three or more prior convictions for "violent" felonies. The latter three Ohio felonies listed above were the predicate offenses upon which the ACCA enhancement was based. On direct appeal, however, the ACCA enhanced sentence was vacated as the panel concluded that the 1989 Muskingum County Breaking and Entering conviction was not a "violent felony" within the meaning of the ACCA. The conviction was affirmed but the cause was accordingly remanded for resentencing.
 
 
 7
 A new presentence investigation report was prepared after the remand. Included in the report were the following recommendations: First, Bentley's base offense level should be set at level 20, pursuant to USSG § 2K2.1(a)(2), as he had one countable prior felony conviction. In addition, Bentley's base offense level should be increased by 6 levels pursuant to USSG § 2K2.1(b)(1)(F) as the underlying offense involved more than 50 firearms. Finally, Bentley should be accorded the three level reduction for acceptance of responsibility, pursuant to USSG § 3E1.1, although the reduction would not, in practice, effect an actual decrease in the guideline range. Bentley registered objections to the criminal history and base offense calculations and to the refusal of the district court to effect a downward departure to permit the acceptance of responsibility deduction to be reflected in the total offense. The court rejected these objections and proceeded to sentence Bentley to a 120 month term of incarceration (base offense level = 25, criminal history = VI). This appeal followed. On appeal, counsel for Bentley raises all three claims initially presented to the district court.
 
 
 8
 Bentley's first claim is that the government did not carry its burden of proof to demonstrate that Bentley's base offense level should be enhanced by 6 levels pursuant to USSG § 2K2.1(a)(4)(A) as having been convicted of a prior violent felony.
 
 
 9
 Bentley's first claim addresses the proof supporting his base offense level as calculated under USSG § 2K2.1. USSG § 2K2.1(a)(4)(A) mandates a base offense level of 20 for one convicted of violating 18 U.S.C. § 922(g) and who has one prior felony conviction of a crime of violence. USSG § 2K2.1(a)(6) provides for a base offense level of only 14, however, if the convicted defendant is a "prohibited person." The district court found that Bentley fell within the ambit of § 2K2.1(a)(4)(A) based on a conclusion that Bentley did not complete serving out a 1974 aggravated robbery conviction until March 13, 1978. Bentley contends that the government did not prove that he had one prior conviction of a crime of violence and that the proof only supports a finding that he is a "prohibited person" within the meaning of USSG § 2K2.1(a)(6). Bentley does not contest the characterization of the prior conviction as a felony of violence. Instead, Bentley disputes that the prior conviction (or, of more relevance, the resulting incarceration) took place within 15 years of the instant offense.
 
 
 10
 The government bears the initial burden of establishing the applicability of a sentencing enhancement factor by a preponderance of the evidence. United States v. Garner, 940 F.2d 172 (6th Cir.1991). Appellate review of a guideline sentence is generally governed by 18 U.S.C. § 3742. Under § 3742, this court will review de novo a sentencing court's interpretation of the guideline, but will review findings of fact for clear error only. United States v. Watkins, 994 F.2d 1192, 1195 (6th Cir.1993).
 
 
 11
 The decision of the district court at issue is not clearly erroneous. The date of the instant offense was April 15, 1992. The government was thus required to prove in this context that Bentley had been incarcerated on or after April 15, 1977, for a felony of violence. See USSG § 2K2.1, comment. (n. 5) (crime of violence to be counted if it would add to criminal history score under USSG § 4A1.1); USSG § 4A1.1, comment. (n. 1) (sentence imposed more than fifteen years prior to instant offense not counted in criminal history score unless resulting incarceration of more than one year and one month extended into this fifteen year period [cross-reference to USSG § 4A1.2(e) ].
 
 
 12
 The difficulty in computing the dates of Bentley's various sentences is that many of them were imposed at different times to run consecutively to other, pre-existing sentences. This resulted in several different, indefinite sentences culminating in one release date. The district court entertained arguments on this matter at sentencing with the dispute centering around three of Bentley's convictions: the Logan County Breaking and Entering committed on March 5, 1974; the Montgomery County Breaking and Entering offense committed on March 23, 1974 and the Stark County Robbery committed on May 3, 1974. The Ohio penal system apparently aggregated the consecutive sentences and arrived at one release date, March 13, 1978. The question was whether it could be determined if Bentley was serving the Aggravated Robbery sentence at his release on March 13, 1978.
 
 
 13
 The court heard testimony from United States Parole Officer Tina Ankrom in this regard. Ankrom offered her opinion, based on her view of the records, that Bentley served out his offenses in the order in which he was eligible for parole.
 
 
 14
 The court concluded from this that it was logical to assume that Bentley served the two Breaking and Entering sentences prior to satisfaction of the Aggravated Robbery sentence. As Bentley's ultimate release date was within the fifteen year window for counting purposes, the court applied the provisions of USSG § 2K2.1(a)(4)(A).
 
 
 15
 The district court conclusion in this regard is supported by the record. It is first noted that there is nothing to contradict the assessment of Parole Officer Ankrom that Bentley served out his offenses in the order in which he was eligible for parole. In addition, counsel for the government cites this court to an unpublished case in which a panel of this court affirmed an almost identical conclusion supported by almost identical testimony by a parole officer. United States v. Carter, No. 93-3858, 1994 WL 43428 (6th Cir. Feb. 11, 1994) (per curiam). This panel finds the reasoning of Carter persuasive and follows it in the present case.
 
 
 16
 Bentley's second claim is that the district court erred when it considered the total number of firearms involved in the offense. Counsel claims that the court, in considering all the firearms seized from the automobile as well as Bentley's apartment, exceeded "relevant conduct" requirements in fashioning the appropriate punishment. Counsel would limit the court's consideration to the twenty firearms mentioned in the specific count to which Bentley pleaded guilty under the plea agreement.
 
 
 17
 USSG § 1B1.3(a)(2) provides that other uncharged conduct may be considered by the sentencing court when it is a part of the same course of conduct or common scheme or plan as the offense of conviction. This includes conduct that may have been the subject of dismissed counts. United States v. Smith, 887 F.2d 104, 106-07 (6th Cir.1989), or even conduct underlying a count on which the defendant was acquitted. United States v. August, 984 F.2d 705, 713 (6th Cir.1992), cert. denied, 114 S.Ct. 158 (1993). A sentencing court's inquiry into, and consideration of, relevant conduct is likewise not bound by any limitations set forth in a plea agreement. United States v. Velez, 1 F.3d 386, 390 (6th Cir.1993). The district court was thus entitled to take into account the entire supply of firearms in Bentley's presence and under his control in his automobile and in his apartment in fashioning the appropriate guideline range.
 
 
 18
 The final challenge concerns the acceptance of responsibility reduction on Bentley's sentence. The court arrived at Bentley's sentence by determining the base offense level subtotal (28), subtracting three levels for acceptance of responsibility (25) and then correlating this figure with the criminal history category (VI). This results in a guideline range of 110-137 months. The statutory maximum, however, is 120 months. USSG § 5G1.1.1(c) provides that, in this situation, the sentence may be imposed at any point in the guideline range not greater than the statutory maximum. The court then proceeded to sentence Bentley to the statutory maximum of 120 months.
 
 
 19
 Counsel for Bentley protests that, in this situation, defendant received no benefits from the USSG § 3E1.1 deduction for acceptance of responsibility. Counsel cites to USSG Ch. 5, Pt. A, contending that the subtotal base offense level should have been 25, the "highest base offense level consistent with Mr. Bentley's criminal history score." With the three level acceptance of responsibility reduction, Bentley contends that the ensuing range of 84-105 months is the better, more "fair" result.
 
 
 20
 Bentley furnishes no support in law for this argument. We review de novo a district court's guideline sentence decision where, as here, the error alleged is the application of a particular guideline to uncontested facts. United States v. Smith, 39 F.3d 119, 122 (6th Cir.1994). The sentencing court is clearly required to calculate a base offense level and then adjust for any applicable statutory maximum. U.S.S.G. § 5G1.1; United States v. Rodriquez, 64 F.3d 638, 641 (11th Cir.1995) (per curiam). The sentencing court in the case at bar did exactly that, and it followed U.S.S.G. § 1B1.1(a)-(e).
 
 
 21
 It is noted by the government that this final appellate claim could also be construed as a request to review the propriety of the district court's refusal to effect a downward departure. In general, an appellate court is without jurisdiction to review a decision not to effect a downward departure. United States v. Pickett, 941 F.2d 411, 417 (6th Cir.1991); United States v. Draper, 888 F.2d 1100 (6th Cir.1989). A failure to depart downward is reviewable only if the sentencing court acted on the mistaken belief that it lacked authority to depart from the guideline range. United States v. Maddalena, 893 F.2d 815, 817-18 (6th Cir.1989). Where there is no such error and the sentence is otherwise lawful, the failure to depart is not subject to review. United States v. Davis, 919 F.2d 1181, 1187 (6th Cir.1990).
 
 
 22
 Accordingly, the district court's judgment is affirmed.